Ricardo LAUREL, Appellant,

v.

Howard HERSCHAP, Individually and d/b/a HRH Operating, Inc. a/k/a HRH Energy, Inc. a/k/a Herschap Bros., Appellee.

No. 04–98–00706–CV.

Court of Appeals of Texas, San Antonio.

Sept. 22, 1999.

Jack Modesett, III, Law Offices of Jack Modesett, III, Corpus Christi, for Appellant.

Raul Casso, Wilson, Trevino, Freed, Casso & Valls, P.L.L.C., Laredo, W. Wendell Hall, Renee Forinash McElhaney, Fulbright & Jaworski, L.L.P., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

## OPINION ON APPELLEE'S MOTION FOR REHEARING

Opinion by: PHIL HARDBERGER, Chief Justice.

Appellee's motion for rehearing is GRANTED. This court's opinion and judgment dated June 23, 1999 are withdrawn, and this opinion and judgment are substituted.

Ricardo Laurel ("Laurel") appeals a summary judgment rendered in favor of Howard Herschap d/b/a HRH Operating, Inc. ("HRH"). In his sole point of error, Laurel asserts that the trial court erred in granting summary judgment in favor of HRH based on a no duty argument because HRH had a duty to exercise control with reasonable care.

The motion for rehearing makes a persuasive point. While HRH may have exercised control in some sense, it did not exercise control over the defective mechanism that malfunctioned. The mechanism that actually caused the injury, the latch, was not owned or controlled by HRH, nor did HRH have knowledge that the latch was defective. The control being exercised by HRH at the time, the stopping of the pipe, did not cause the injury. Therefore, upon further consideration, we affirm the trial court's judgment.

### FACTUAL AND PROCEDURAL HISTORY

HRH was retained by the operator of several oil wells to oversee the continued production of the wells. Pickens Well & Lease Service, Inc. ("Pickens") was retained by HRH as a subcontractor to "pull" a well, which involved the removal and replacement of underground piping. Pickens supplied all of the equipment necessary to pull the well. Laurel was employed by Pickens and was injured when a pipe fell on him after the elevator or clasp that held the pipe suspended in the air came undone.

Laurel brought suit against several defendants, including HRH. Laurel asserted that one of HRH's employees, David Bustamante ("Bustamante"), controlled the stoppage of the pipe in mid-air which allowed the pipe to fall. Laurel contended

HRH was liable for this action because it supervised and controlled Pickens' activities, interrupted Pickens' normal activities, required the pipe to be held in mid-air, and interfered with the method in which Pickens was conducting its job.

After the other defendants were dismissed or nonsuited, HRH moved for summary judgment, asserting that it had no duty to insure the safety of Laurel. HRH also asserted that it was not liable for any premises defect because it was not in possession of the premises and had no knowledge of the defect in the elevator that caused Laurel's injuries. HRH further asserted that Laurel failed to produce any evidence on many elements of his claim.

### STANDARD OF REVIEW

HRH's motion requested summary judgment under both traditional summary judgment standards and no evidence summary judgment standards. Under traditional standards, a defendant moving for summary judgment has the burden of establishing that no genuine issue of material fact exists as to one or more essential elements of the plaintiff's cause of action and that the defendant is entitled to judgment as a matter of law. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). If the defendant meets this burden, the plaintiff must then raise a genuine issue of material fact on the targeted element of the plaintiff's cause of action. *Gonzalez v. City of Harlingen*, 814 S.W.2d 109, 112 (Tex.App.—Corpus Christi 1991, writ denied). In reviewing a summary judgment, an appellate court accepts as true all evidence supporting the non-movant. *Nixon*, 690 S.W.2d at 549. All inferences are indulged in favor of the non-movant, and all doubts are resolved in his favor. *Id.*

We apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict. *Moore v. K Mart Corp.*, 981 S.W.2d 266, 269 (Tex.App.—San Antonio 1998, pet. denied); Judge David Hitt-

ner & Lynne Liberato, *No–Evidence Summary Judgments Under the New Rule*, in STATE BAR OF TEXAS PROF. DEV. PROGRAM, 20 ADVANCED CIVIL TRIAL COURSE D, D–5 (1997). We look at the evidence in the light most favorable to the respondent against whom the summary judgment was rendered, disregarding all contrary evidence and inferences. *Moore*, 981 S.W.2d at 269; *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997), *cert. denied*, 523 U.S. 1119, 118 S.Ct. 1799, 140 L.Ed.2d 939 (1998). A no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Moore*, 981 S.W.2d at 269; TEX.R. CIV. P. 166a(i). Less than a scintilla of evidence exists when the evidence is "so weak as to do no more than create a mere surmise or suspicion" of a fact. *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983). More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Havner*, 953 S.W.2d at 711.

### DISCUSSION

■ HRH, as the operator's general contractor, may be liable for two types of negligence in failing to keep the premises safe: (1) that arising from an activity on the premises; and (2) that arising from a premises defect. *Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex.1997). To recover on a negligent activity theory, the plaintiff must establish that he was injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998); *Exxon Corp. v. Garza*, 981 S.W.2d 415, 420 (Tex.App.—San Antonio 1998, pet. denied). The distinction between negligent activity and premises defect claims is neither novel nor recent. *Sibai v. Wal–Mart Stores, Inc.*, 986 S.W.2d 702, 706

(Tex.App.—Dallas 1999, no pet. h.). The distinction has been well established in Texas since the turn of the century, and more recent cases are in accord. *Id.* (citing case law history). The Texas Supreme Court has repeatedly recognized the distinction between a premises liability claim and a negligent activity claim. *Id.* (citing numerous Supreme Court cases in addition to those cited above). "Because our supreme court has repeatedly 'decline[d] to eliminate all distinction between premises conditions and negligent activities,' *id.,* we must determine whether [Laurel's] injuries resulted from a condition or an activity." *Garza,* 981 S.W.2d at 420.

■ The elevator that lifted the pipe that fell on Laurel was owned by Pickens and was used in conjunction with a truck-mounted pulling unit or pulling rig that Pickens brought to the well. Pickens brought the rig to the well when necessary to perform the tasks for which it was hired. The rig was generally at the well for one or two days while Pickens performed its services. Laurel claims that HRH was negligent in interrupting the "pulling" of the pipe and requiring the pipe to be stopped in mid-air. Laurel acknowledges that the pipe fell because the spring in the back of the elevator was defective but asserts that the pipe would not have fallen on him if it had not been suspended in mid-air. Laurel testified at his deposition that the pipe fell less than 60 seconds after Bustamante directed another Pickens' employee, Homero Gonzalez ("Gonzalez"), to stop working. Given these facts, we conclude that Laurel's injury was a contemporaneous result of Bustamante's allegedly negligent activity of directing that work be stopped. Therefore, this is a negligent activity case, not a premises defect case.

■ A general contractor does not have a duty to ensure that a subcontractor performs work in a safe manner. *Redinger v. Living, Inc.,* 689 S.W.2d 415, 418 (Tex.1985). If, however, the general contractor exercises some control over a sub-

contractor's work, the general contractor may be liable unless it exercised reasonable care in supervising the activity. *Id.* This rule applies when the general contractor retains some control over the manner in which the subcontractor's work is performed, but does not retain the degree of control that would subject him to liability as a master. *Id.* To be liable, the general contractor's role must be more than a general right to order the work to start or stop, to inspect progress or receive reports. *Id.* Retaining the power to direct the order of the work to be performed or to forbid it from being performed in a dangerous manner is a sufficient exercise of control to give rise to a duty to exercise reasonable care. *Id.*

■ Laurel contends that he introduced evidence to show that HRH exercised control over Pickens' work, thereby giving rise to a duty to exercise reasonable care. In his brief, Laurel relies on both his deposition testimony and his affidavit. Laurel's affidavit, however, was filed with his motion for new trial after the summary judgment had been granted. When a motion for new trial is filed after summary judgment is granted, the trial court may only consider the record as it existed prior to granting the summary judgment. *Leinen v. Buffington's Bayou City Service Co.,* 824 S.W.2d 682, 685 (Tex.App.—Houston [14th Dist.] 1992, no writ). Laurel's affidavit, therefore, cannot be considered as part of the summary judgment evidence.

Since we cannot consider Laurel's affidavit, we must determine whether Laurel's deposition testimony supports his argument that HRH owed him a duty. With regard to Laurel's contention that Bustamante interfered with Pickens' work and required the pipe to be held in midair, Laurel testified:

Q. Okay. Was there—in your opinion, was it the elevator that caused your accident?

A. Yes.

Q. Was there any—was it anybody else's fault other than the elevator?

A. Well, I don't know. Well, if David Bustamante wouldn't have told them to stop the machine and talked to them and leave it hanging in the air, I don't think it would have happened.

Q. Okay. Do you know why it was hanging in the air?

A. Yeah. Because David Bustamante went over and told Homer to stop. And it started—he put the brake on the rig and left it hanging in the air and they started talking. When we were waiting for them to finish talking, that's when the pipe fell.

Q. Do you know why he left it hanging in the air?

A. No. I guess because David wanted to talk to him and, you know, he just stopped it.

The only evidence in our record with regard to the subject of the conversation between Bustamante and Gonzalez is Bustamante's deposition testimony that he was inquiring into how much pipe would need to be removed to finish the repair. Laurel further testified:

Q. When you were doing this work, what was Mr. Bustamante doing?

A. Just watching us do the job.

Q. Okay. Was he directing you in any way?

A. Well, yes.

Q. And how—what do you mean by that?

A. Well, he would tell us, like, lay this pipe over here or, you know, lay this pipe over there, you know, like that. He'd tell us stuff like that.

Q. Okay. Did he tell you how to use the elevator?

A. No.

Q. Okay. Did he tell you how to pull the pipe out of the hole?

A. No.

Q. Did he do anything but tell you where to lay the pipe?

A. No, just that.

█ Laurel's testimony does not controvert the statements made by Bustamante and Gonzalez in their affidavits that Bustamante never provided any supervision, direction or control over the manner in which Pickens' employees operated the equipment. Laurel's testimony is consistent with those affidavits because he states that Bustamante did not tell Pickens' employees how to use the elevator. Laurel's testimony that he did not "think" the accident would have happened if Bustamante had not told Gonzalez to stop the machine and that he "guessed" Gonzalez left the elevator hanging in the air because Bustamante wanted to talk to him is not clear, positive, direct and free from contradiction. *Casso v. Brand*, 776 S.W.2d 551, 558 (Tex.1989); Tex.R. Civ. P. 166a(c).

Laurel's deposition testimony is simply too weak to raise a fact issue. Neither he, nor any other witness, connected the control HRH was exercising (stopping the elevator) with the failure of the latch. The failing of the latch caused the injury. But Laurel is unable to say that the failure was caused by HRH, nor is there any expert testimony to that effect. We are simply left with disconnected elements of control, causation, and injury that do not create any fact issue that would preclude summary judgment in favor of HRH.

### CONCLUSION

The trial court's judgment is affirmed.

Dissenting opinion by ALMA L. LÓPEZ, Justice.

Dissenting opinion by ALMA L. LÓPEZ, Justice.

Because I believe that our original opinion was correct, I dissent from the majority's opinion on rehearing.