TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00693-CV






Ronald Bibace, Appellant



v.



Klaus Schmickler, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT


NO. 99-07738, HONORABLE JOSEPH H. HART, JUDGE PRESIDING 







 Ronald Bibace appeals from the district court's decision to deny effect to a Florida
judgment. We will affirm the judgment.


Procedural and Factual Background


 This case involves a Florida translator who came to Texas to sue a German citizen
for getting divorced in France. Bibace, a Floridian, was hired as a translator by Catherine
Schmickler, a French citizen, in her 1992 Florida suit for divorce from Klaus Schmickler, a
German citizen. Bibace agreed to accept as his fee a portion of Catherine's share of the marital
estate as divided by the Florida court. The Schmicklers, however, ultimately obtained a divorce
in 1993 from the matrimonial courts of France; Bibace was not involved in the French proceeding. 
The Schmicklers then dismissed the Florida divorce suit, and there was no Florida disposition for
Bibace to share. Believing this unfair, Bibace in 1995 sued Catherine, Emile Bonnes (her father),
and Klaus in case number 95-001828 09 in the Florida state courts to recover his lost fee; he
apparently never served Klaus. On August 20, 1996, the Florida court signed a "Final Judgment"
in that case based on the entry of default against Catherine and Emile, awarding more than $1.7
million to Bibace. On July 21, 1997, the Florida court signed an order impleading Klaus as a
third-party defendant under Florida Statute chapter 56.29, authorizing "proceedings
supplementary" to get assets of judgment debtors that are in the hands of other parties. Bibace
attempted service on Klaus's attorney, though Klaus here challenges the efficacy of that service. 
On March 23, 1999, the Florida court signed an "Amended Final Judgment" in the same cause
number awarding Bibace more than $2 million from Klaus. On appeal, Bibace asserts that this
latter judgment arose from the proceedings supplementary.

 Believing that Klaus owned property in Texas, Bibace sought to collect on the
judgment here. Bibace filed the Florida judgment in Travis County under chapter 35 of the Texas
Civil Practice and Remedies Code. Under Texas law, a properly filed judgment from another state
"has the same effect and is subject to the same procedures, defenses, and proceedings for
reopening, vacating, staying, enforcing, or satisfying a judgment as a judgment of the court in
which it is filed." Tex. Civ. Prac. & Rem. Code Ann. § 35.003 (West 1997). Klaus filed a
special appearance to challenge Texas's personal jurisdiction over him. Subject to that special
appearance, he filed a motion for new trial and requested that the Florida judgment be denied
recognition and vacated.

 The court set a hearing date of September 16, 1999--four days before the motion
for new trial would be automatically overruled by operation of law. See Tex. R. Civ. P. 329b(c). 
Bibace moved for a continuance, contending that he received documents from Schmickler tardily
and that Florida was being menaced by a hurricane. The district court overruled the motion for
continuance. On September 17, 1999, the district court signed an order denying Klaus's challenge
to its jurisdiction, denied Bibace's challenge to Klaus's affidavit in support of his motion for new
trial, and granted Klaus's motion for new trial. The Texas court found that (1) the Florida court
did not have personal jurisdiction over Klaus because he lacked sufficient contacts with Florida,
(2) there was no proper service on him under Florida law, and (3) the Florida court amended the
final judgment after it lost jurisdiction over the case. The Texas court held that the Florida
judgment "is denied recognition and is vacated and set aside." The court denied all other relief not
specifically granted.

 Bibace filed many documents after the Texas judgment. On October 12, 1999, he
filed a notice of appeal. On October 14, 1999, he filed a formal bill of exception explaining the
circumstances that prevented him from bringing the records to the hearing; he requested that the
district court take judicial notice of the Florida court records that he would file. On November
12, 1999, Bibace requested findings of fact and conclusions of law. By letter dated November 22,
1999 and filed November 29, 1999, Bibace sent documents from the Florida courts to the Texas
court to "supplement" the record. Because the Texas district clerk had already filed the clerk's
record in this Court on November 12, 1999, these additional Florida court documents are
contained in a supplemental clerk's record.


Preliminary Issue: Request to Strike Bibace's Supplemental Record


 Klaus filed a motion in this Court to strike the supplemental documents from the
appellate record because they were not considered by the Texas district court. Bibace contends
we should consider the documents because he only had six hurricane-threatened days to review
Klaus's affidavit before the hearing, because the Texas district court refused to grant a continuance
of the hearing, and because Klaus's representations to the Texas court conflict with the Florida
court records.

 We cannot consider the supplemental records. The Florida records were not filed
until more than two months after the hearing. We cannot consider items that were not before the
district court when it made its decision. See Laurel v. Herschap, 5 S.W.3d 799, 802 (Tex.
App.--San Antonio 1999, no pet.); see also Noble Exploration, Inc. v. Nixon Drilling Co., 794
S.W.2d 589, 592 (Tex. App.--Austin 1990, no writ).

 Bibace failed to preserve his complaint through a complete, timely, formal bill of
exception. A bill must be presented to and signed by the trial court. Tex. R. App. P. 33.2(c). 
"When the appellate record contains the evidence needed to explain a bill of exception, the bill
itself need not repeat the evidence, and a party may attach and incorporate a transcription of the
evidence certified by the court reporter." Tex. R. App. P. 33.2(b). Though he timely filed the
bill and stated his complaint, there was no signature (or space for one) by the trial court as
required by Rule 33.2(c)(2) showing that the court passed on the correctness of the bill. His
failure to attach evidence to the bill is perhaps more critical because the substance of his bill was
that evidence was not contained in the record; the bill accordingly needed to contain the missing
evidence. See Tex. R. App. P. 33.2(b). The disputed evidence was not offered at the hearing on
Klaus's motion for new trial, did not accompany the bill, and was not given to the trial court until
48 days after the notice of appeal was filed--eighteen days too late. See Tex. R. App. P. 33.2(e)
(bill must be filed "no later than 30 days after the filing party's notice of appeal is filed"). The
evidence therefore was not part of the bill and cannot be considered part of the appellate record.

 No equitable considerations require that we overlook these deficiencies. We cannot
consider the denial of Bibace's motion for continuance because he does not assign it as error. He
does not explain his failure to include the "excluded" evidence with his bill of exception filed in
October. Further, Bibace did not avail himself of opportunities to extend the court's plenary
power and thereby extend his time to get the Florida records to the trial court for post-trial
reconsideration. A motion for new trial could have extended the deadline for the notice of appeal,
the district court's plenary power, and the time for filing a bill of exception to include the
November 29 filing of the records. See Tex. R. Civ. P. 329b(e), (f). Bibace requested findings
of fact and conclusions of law on November 12, 1999, fifty-six days after judgment--well beyond
the twenty-day post-judgment period allotted for such requests. See Tex. R. Civ. P. 296. We
grant the motion to strike the Florida court records submitted late to the Texas district court.


Discussion


 Bibace raises eight issues on appeal: Should the Texas court have considered
Klaus's affidavit in support of the motion for new trial when it was not properly authenticated and
Bibace did not have the required ten days before trial to examine it? Did Klaus meet his burden
to prove three specific grounds on which to deny domestication of the judgment? Was the service
on Klaus proper under Florida law? Did Klaus have sufficient minimum contacts to supply the
Florida court with personal jurisdiction over him? Did the Florida court have jurisdiction over
the case under Florida law? Did the Texas court abuse its discretion by ruling without sufficient
evidence regarding Florida law? Did the Texas court abuse its discretion in finding for Klaus? 
Did the Texas court exceed its jurisdiction in "vacating" the Florida judgment?

 Once Bibace filed the Florida judgment that appeared final and enforceable, Klaus
bore the burden to establish that Texas should not give it full faith and credit. See Markham v.
Diversified Land & Exploration Co., 973 S.W.2d 437, 439 (Tex. App.--Austin 1998, pet. denied);
see generally Tex. Civ. Prac. & Rem. Code Ann. § 35.003 (West 1997). The fact that the Florida
judgment was by default is irrelevant. Markham, 973 S.W.2d at 439. Recitals in the foreign
judgment are presumed to be valid, and the challenger has the burden to produce evidence showing
lack of jurisdiction. Id.; see also Mitchim v. Mitchim, 518 S.W.2d 362, 364 (Tex. 1975). There
is no dispute on appeal that Bibace shifted the burden to Klaus.


Can we consider Klaus's affidavit?

 The validity of Klaus's affidavit--the only evidence Klaus provided in support of
his motion for new trial--is thus critical to the resolution of the appeal. In issue four, Bibace
contends the district court should have struck Klaus's affidavit from the record because Klaus did
not provide it to him timely and because it was not properly authenticated.

 Bibace has not shown that Klaus violated any notice provisions regarding the
affidavit. Bibace contends that Texas rules require that he receive the affidavit "seven or more
days before trial." The proceeding at issue, however, is not a trial but a hearing on a motion for
new trial. We find nothing in Texas Rules of Civil Procedure 320-329b (governing motions for
new trial) that requires a movant for new trial to provide the respondent with a copy of an affidavit
seven days in advance of that hearing.(1)

 Bibace also contends that the trial court should have rejected Klaus's affidavit
because it was improperly authenticated. Bibace raised several objections to Klaus's affidavit in
his written response to Klaus's motion for new trial. Bibace asserts that the authentication is
deficient because the notary did not print or write his name or sign legibly. He further alleges that
the notary must provide a seal of office showing the notary's name and the notary's commission's
expiration date. See Tex. Gov't Code § 406.013 (West 1998). He complains that the notary failed
to state either that he personally knew Klaus or that Klaus produced evidence identifying himself. 
See Tex. Civ. Prac. & Rem. Code Ann. § 121.005(b) (West Supp. 2001). Finally, Bibace argues
that the affidavit is deficient because it fails to state where Klaus resides, citing general affidavit
principles as discussed in 3 American Jurisprudence 2d 481 (1986).

 Klaus dismisses these Texas requirements as inapplicable to an affidavit sworn, not
in Texas, but in the Turks and Caicos Islands. Texas law states that an oath, including an
affidavit, may be administered outside the United States by a notary public. Tex. Gov't Code
Ann. § 602.004(3) (West 1994). If the oath is administered by a notary public of another country,
Texas courts imbue that notary with the powers accorded notaries in Texas--powers they may not
have in their homeland. See Ward v. Valand, 135 S.W.2d 770, 770 (Tex. Civ. App.--El Paso
1940, writ dism'd) (oath before Norwegian notary valid in Texas suit though Norwegian courts
would not accept it). A logical extension of that is to hold such notaries to the responsibilities and
requirements of notaries swearing oaths in Texas.

 Bibace has not shown that Klaus's affidavit violated Texas standards. Texas defines
an affidavit as "a statement in writing of a fact or facts signed by the party making it, sworn to
before an officer authorized to administer oaths, and officially certified to by the officer under his
seal of office." Tex. Gov't Code Ann. § 312.011 (West 1998). Bibace cites no requirement in
Texas law that the notary's signature be legible or that the notary's name be printed on the
affidavit. The language in Government Code section 406.013(a) that Texas notaries "shall
authenticate all official acts with the seal of office" is apparently directory, not mandatory. See
Kelley v. Southwestern Bell Media, Inc., 745 S.W.2d 447, 449-50 (Tex. App.--Houston [1st Dist.]
1988, no writ) (accepting affidavit supporting attorney's fees claim despite lack of seal). His
argument about the notary's failure to state either that he personally knew Klaus or that Klaus
produced evidence identifying himself fails because Civil Practice and Remedies Code section
121.005(b) governs acknowledgments of written instruments, not affidavits. Finally, Bibace does
not show that Texas requires the affiant to state his residence. Texas courts emphasize the
substance of the affidavit over the form, and we are not compelled here to depart from that
precedent. See Acme Brick, a Div. of Justin Indus., Inc. v. Temple Assoc., Inc., 816 S.W.2d 440,
441 (Tex. App.--Waco 1991, writ denied); see also Norcross v. Conoco, 720 S.W.2d 627, 630
(Tex. App.--San Antonio 1986, no writ). We resolve issue four against Bibace and will consider
Klaus's affidavit.


Does the record show that the Florida court had jurisdiction over Klaus?

 The Texas district court held that the Florida court did not have jurisdiction over
Klaus when rendering judgment against him. When a plaintiff seeks to enforce in Texas the
judgment of another state, the defendant may challenge the jurisdiction of the other state to render
the original judgment; the defendant may attempt to show either that service of process was
inadequate under the service of process rules of the other state or that the other state's exercise of
jurisdiction does not meet the requirement of that state's long-arm statute and the federal
constitution's guarantee of due process of law. See O'Brien v. Lanpar Co., 399 S.W.2d 340, 341-42 (Tex. 1966); First Nat'l Bank v. Rector, 710 S.W.2d 100, 104 (Tex. App.--Austin 1986, writ
ref'd n.r.e.).(2) Klaus succeeded on both prongs. The Texas court also held that the Florida court
lacked jurisdiction because too much time passed between the rendition of the original judgment
and the purported rendition of the amended judgment.

 We first consider Bibace's contention in issue five that the court erred in ruling
without sufficient evidence regarding Florida law. He cites no requirement, and we find none,
that a Texas court hear testimony about another state's law before determining what that law
requires. The relevant statutes were before the court. The district court is capable of researching
and interpreting Florida law. We resolve issue six against Bibace.

 Our review of the district court's decision that Klaus lacked sufficient contacts with
Florida to support personal jurisdiction involves a mixed question of fact and law. The existence
of personal jurisdiction is a question of law, but that determination must sometimes be preceded
by resolution of underlying factual disputes. Daimler-Benz Aktiengesellschaft v. Olson, 21
S.W.3d 707, 715 (Tex. App.--Austin 2000, pet. filed). We will review the entire record and will
set aside only trial-court findings that are so against the great weight and preponderance of the
evidence as to be manifestly erroneous or unjust. See id.; see also In re King's Estate, 244
S.W.2d 660, 661 (Tex. 1951). When a trial court makes no findings, all fact findings necessary
to support its judgment are implied. Olson, 21 S.W.3d at 715. If sufficient evidence supports the
implied findings of fact, we must uphold the trial court's judgment on any legal theory supported
by the findings. Id. We review the legal conclusions supporting the judgment to determine
whether they are correct as a matter of law. Id.

 Our inquiry into the Florida court's jurisdiction has both state and federal
components. The plaintiff must satisfy both Florida's long arm-statute (Florida Statutes chapter
48.193) and the federal constitutional due process requirements of minimum contacts. See
Venetian Salami Co. v. Parthenais, 554 So. 2d 499, 502 (Fla. 1989). Both the Florida statute and
the federal constitution allow two means of showing jurisdiction--specific and general.

 We will, as Bibace urges, concern ourselves primarily with the Florida court's
jurisdiction over Klaus in the proceedings supplementary. See Fla. Stat. ch. 56.29(5). We will
briefly discuss in footnotes jurisdiction over him at the inception of the original Florida lawsuit.

 Bibace argues on appeal for two bases of specific jurisdiction under chapter
48.193(1). The relevant portions of the statute provide as follows:


(1) Any person, whether or not a citizen or resident of this state, who personally
or through an agent does any of the acts enumerated in this subsection thereby
submits himself or herself . . . to the jurisdiction of the courts of this state for
any cause of action arising from the doing of any of the following acts: 


 (a) Operating, conducting, engaging in, or carrying on a business or business
venture in this state or having an office or agency in this state. 


 (b) Committing a tortious act within this state.



Fla. Stat. ch. 48.193. Bibace argues that Klaus's business interests (owning and running a
corporation that owned a Florida shopping center) and residence in Florida provide specific
jurisdiction. For specific jurisdiction, however, the cause of action must arise from the specific
activities on which suit is filed. To support specific jurisdiction in this case, Klaus's business
interests or tortious acts within Florida must have led to Klaus's receipt of property from
Catherine or Emile. It is not clear when the transfer of assets is alleged to have occurred, but the
judgment against Catherine and Emile was signed in 1996. Bibace avers that Klaus "was a Florida
resident who did business in the State of Florida in the years 1990 through 1993" but "has since
become a non-resident." Bibace's own affidavit thus indicates that Klaus had no Florida business
interests after the judgment, thus the alleged asset transfer apparently did not arise from Klaus's
business interests. Klaus avers that he committed no tort in Florida and that Bibace's affidavit
lacks any proof of a Florida tort that led to the asset transfer. Bibace indicates that Klaus was in
France when he convinced Catherine to divorce in France, and there is no indication regarding
where he received Florida assets from Catherine. The Texas court did not err by finding that the
Florida court had no specific jurisdiction over these claims.(3)

 Nor do we find support in the record for exercising general jurisdiction over Klaus
in Florida. Facts that satisfy the general jurisdiction provision of the Florida statute will satisfy
federal constitutional due process requirements. See Woods v. Nova Cos. Belize Ltd., 739 So. 2d
617, 620 (Fla. Dist. Ct. App. 1999). The Florida statute provides that "[a] defendant who is
engaged in substantial and not isolated activity within this state, whether such activity is wholly
interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether
or not the claim arises from that activity." Fla. Stat. ch. 48.193(2) (emphasis added). "Substantial
and not isolated activity" has been held to mean "continuous and systematic general business
contact" with Florida. See Achievers Unlimited, Inc. v. Nutri Herb, Inc., 710 So. 2d 716, 720
(Fla. Dist. Ct. App. 1998) (quoting American Overseas Marine Corp. v. Patterson, 632 So. 2d
1124, 1128 (Fla. Dist. Ct. App. 1994)). This "continuous and systematic" contacts standard is the
federal constitutional due process standard for minimum contacts enunciated by the Supreme Court
in Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 415-16 (1984). In
Helicopteros, the Court found the following activities did not constitute continuous and systematic
general business contacts with Texas: sending its chief executive officer to Houston for a contract
negotiation session; accepting checks drawn on a Houston bank; purchasing helicopters, equipment
and training services from a Texas corporation for substantial sums; and sending personnel to the
Texas corporation's Fort Worth facilities for training. Id. at 417-19. The evidence in the record
is that Klaus had no business interests in Florida after 1993 and was not a resident after "the early
nineties." Bibace did not commence the proceedings supplementary until 1997, well after Klaus
left the state.(4) We conclude that the Texas district court did not err by concluding, on the record
before it, that the Florida court did not have jurisdiction over Klaus when it rendered the default
judgment against him.

 The conclusion that there was no jurisdiction dispenses with the remaining issues
on appeal, either directly or by rendering them moot. The absence of personal jurisdiction
resolves issues one and three against Bibace. Accordingly, we need not consider issue
two--whether Klaus received proper service in Florida. As discussed above, the evidence in the
record supports the Texas district court judgment sufficiently under the proper standard, resolving
issues six and seven against Bibace.


Did the Texas court exceed its power?

 The remaining issue is whether the Texas district court exceeded its power in going
beyond a refusal to domesticate the judgment in Texas. The El Paso Court of Appeals has stated,
"We conclude that when an attack is made on a duly authenticated foreign judgment in this State,
the trial court has only two alternatives, to enforce the judgment or to declare the judgment void
for want of jurisdiction." Trinity Capital Corp. v. Briones, 847 S.W.2d 324, 326-27 (Tex.
App.--El Paso 1993, no writ). The judgment of the Texas district court below stated that "the
judgment against Klaus Schmickler in Case Number 95-001828 09; Ronald Bibace vs. Catherine
Andree Schmickler, et al.; in the Circuit Court of the 17th Judicial Circuit in and for Broward
County, Florida, is denied recognition and is vacated and set aside." The Texas district court's
order can affect the Florida court judgment only with regard to whether it will be enforced in the
state courts of Texas. We construe the district court's judgment as doing no more than vacating
the domesticated judgment in Texas. The Florida state court judgment is otherwise unaffected by
the Texas district court's ruling.

Conclusion


 We conclude that the Texas district court did not err by refusing to strike Klaus's
affidavit and by concluding, based on the record before it, that the Florida court lacked personal
jurisdiction over Klaus. Accordingly, the Texas district court correctly vacated the domesticated
Texas version of the Florida judgment. That ruling did not purport to affect the Florida judgment
itself. We affirm the judgment.



 

 J. Woodfin Jones, Justice

Before Justices Kidd, Patterson and Jones*

Affirmed

Filed: January 11, 2001

Do Not Publish











* Before J. Woodfin Jones, Justice (former), Third Court of Appeals, sitting by assignment. See
Tex. Gov't Code Ann. § 75.003(a)(1) (West 1998).

1. Texas Rule of Civil Procedure 166a, governing procedures for hearings on motions for
summary judgment, does require the respondent to such motions to file and serve responses and
affidavits seven days before that hearing. The summary-judgment rule does not govern hearings
on motions for new trial.
2. We are reviewing the Texas district court's conclusion that the Florida court lacked
jurisdiction. The portion of the order granting the new trial is not appealable. Fruehauf Corp.
v. Carrillo, 848 S.W.2d 83, 84 (Tex. 1993); Cummins v. Paisan Const. Co., 682 S.W.2d 235,
236 (Tex. 1984) (per curiam refusal of writ, finding no reversible error in Cummins v. Paisan
Const. Co., 682 S.W.2d 323 (Tex. App.--Houston [1st Dist.] 1984)). 
3. We reach the same conclusion even if we analyze whether the Florida court had jurisdiction
over Klaus in the original suit. Nothing in the record supports a conclusion that an agreement to
deny Bibace his share of Catherine's marital estate arose from either Klaus's business activities
in Florida or a tort committed in Florida.
4. On the record before us, it also appears that there was no general jurisdiction over Klaus at
the commencement of the suit in 1995.


19. The evidence in the record
is that Klaus had no business interests in Florida after 1993 and was not a resident after "the early
nineties." Bibace did not commence the proceedings supplementary until 1997, well after Klaus
left the state.(4) We conclude that the Texas district court did not err by concluding, on the record
before it, that the Florida court did not have jurisdiction over Klaus when it rendered the default
judgment against him.

 The conclusion that there was no jurisdiction dispenses with the remaining issues
on appeal, either directly or by rendering them moot. The absence of personal jurisdiction
resolves issues one and three against Bibace. Accordingly, we need not consider issue
two--whether Klaus received proper service in Florida. As discussed above, the evidence in the
record supports the Texas district court judgment sufficiently under the proper standard, resolving
issues six and seven against Bibace.


Did the Texas court exceed its power?

 The remaining issue is whether the Texas district court exceeded its power in going
beyond a refusal to domesticate the judgment in Texas. The El Paso Court of Appeals has stated,
"We conclude that when an attack is made on a duly authenticated foreign judgment in this State,
the trial court has only two alternatives, to enforce the judgment or to declare the judgment void
for want of jurisdiction." Trinity Capital Corp. v. Briones, 847 S.W.2d 324, 326-27 (Tex.
App.--El Paso 1993, no writ). The judgment of the Texas district court below stated