



# MEMORANDUM OPINION

No. 04-09-00697-CV

**MASS MARKETING LTD.** d/b/a Super S Foods,
Appellant

v.

Hope **DURBIN**,
Appellee

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2008-CI-12164
Honorable Larry Noll, Judge Presiding

Opinion by:  Marialyn Barnard, Justice

Sitting:  Catherine Stone, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice

Delivered and Filed:  October 20, 2010

AFFIRMED

This is an appeal in a premises liability case.  Mass Marketing Ltd. d/b/a Super S Foods

("Mass Marketing") appeals a jury verdict in favor of Hope Durbin.  Mass Marketing contends:

(1) the evidence is legally and factually insufficient to show Mass Marketing had actual or

constructive knowledge of a defective condition on its premises which posed an unreasonable

risk of harm; (2) the evidence is legally and factually insufficient to prove Mass Marketing

proximately caused Durbin's injuries by failing to exercise reasonable care to reduce or eliminate

a defective condition on its premises which posed an unreasonable risk of harm; (3) the trial court erred in admitting medical service affidavits, and the evidence is legally and factually insufficient to support the jury's award of damages; and (4) Durbin's attorney made an incurable jury argument. We affirm the trial court's judgment.

## BACKGROUND

In 2006, Hope and Clem Durbin were in the produce section at the Super S Foods grocery store in Castroville when Durbin allegedly tripped over a milk crate that was on the floor next to a four foot high, four-by-four square corn display. EMS was called, and Durbin was taken to the hospital for pain in her shoulder and knee. X-rays showed Durbin fractured and dislocated her shoulder, but showed no signs of injury to her knee. The emergency room staff re-set her shoulder and put a brace on her knee. Durbin was 80 years old at the time of trial.

About a week after the accident, Durbin complained she was in so much pain she was unable to walk. Durbin was taken by EMS to Sports Medicine Associates where she saw Dr. Richard Steffen. Dr. Steffen ordered an MRI on Durbin's shoulder and knee. The MRI showed the same shoulder injury as found in the emergency room, but also showed a nondisplaced fracture to Durbin's tibia. Dr. Steffen prescribed rehabilitation, which Durbin performed, but because Durbin claimed the pain continued, she ultimately received a shoulder replacement.

Durbin filed a premises liability suit against Mass Marketing. The case was tried to a jury. The jury reached a verdict in favor of Durbin and awarded her $145,000 in damages, including $106,000 for past medical expenses. The trial court reduced this damage award to $52,424.63, in accordance with section 41.0105 of the Texas Civil Practice & Remedies Code, and rendered judgment on the verdict.

## DISCUSSION

### *Sufficiency of the Evidence*

In its first and second issues, Mass Marketing contends the evidence is legally and factually insufficient to prove (1) Mass Marketing had actual or constructive knowledge the corn display posed an unreasonable risk of harm, and (2) Mass Marketing did not exercise reasonable care to reduce or eliminate the defective condition, which was the proximate cause of Durbin's injuries.

In reviewing a legal sufficiency claim, we view the evidence in the light most favorable to the party for whom the verdict was rendered. *See City of Keller*, 168 S.W.3d 802, 822 (Tex. 2005). We look to whether the evidence presented at trial enables a reasonable and fair minded jury to render the same verdict. *See id.* at 827. We must therefore, "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id.* A legal sufficiency issue will be sustained if the record shows: "(a) a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; (d) the evidence establishes conclusively the opposite of the vital fact." *Id.* at 810 (quoting Robert W. Calvert, *"No Evidence" & "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). If the record contains any probative evidence in support of the jury's findings, we will uphold the jury's verdict. *See Exxon Corp. v. Garza*, 981 S.W.2d 415, 420 (Tex. App.—San Antonio 1998, pet. denied).

In reviewing a factual sufficiency claim, we consider the entire record and determine "if the evidence is so weak or if the finding is so against the great weight and preponderance of the

evidence that it is clearly wrong and unjust." *Dow Chemical Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex. 2001).

In conducting our sufficiency review, we are mindful that the jury, as the fact finder, is the sole judge of the credibility of the witnesses, the weight to be given to their testimony, and the weight to be given to the evidence, and we will not displace the jury's determination even if we would find otherwise. *See City of Keller*, 168 S.W.3d at 819. It is also within the jury's discretion to resolve inconsistencies and conflicts in the evidence, and we must accept the jury's resolution of these inconsistencies and conflicts. *Barrajas v. VIA Metro. Transit Auth.*, 945 S.W.2d 207, 209 (Tex. App.—San Antonio 1997, no pet.).

A landowner owes a duty to those who enter his property, but the level of the landowner's duty is dependent upon the status of those who enter. *Rosas v. Buddie's Food Store*, 518 S.W.2d 534, 536 (Tex. 1975). An invitee, usually a business visitor, is one who enters for the mutual benefit of both the invitee and the landowner. *Id.* at 536 (citing RESTATEMENT (SECOND) OF TORTS § 332 (1965)). Here, Durbin was unquestionably an invitee. As to an invitee, the landowner must exercise reasonable care to protect the invitee from a "dangerous condition . . . known or discoverable to" the landowner. *Wal-Mart Stores, Inc. v. Gonzalez*, 968 S.W.2d 934, 936 (Tex. 1998). To prevail on a premises liability claim, the invitee must show: (1) actual or constructive knowledge of a defective condition on the owner's premises; (2) the defective condition did in fact pose an unreasonable risk of harm; (3) the owner failed to exercise reasonable care to reduce or eliminate the risk; and (4) the owner's failure to exercise reasonable care proximately caused the plaintiff's injuries. *Id.* at 936.

*Knowledge*

Mass Marketing first contends the evidence is insufficient to establish Mass Marketing had actual or constructive knowledge of a defective condition that posed an unreasonable risk of harm on its premises. We disagree.

An invitee may prove the owner had actual knowledge of the defective condition or that the owner reasonably should have known of the defective condition. *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992). If a reasonable inspection would have revealed the defective condition, the owner is charged with constructive knowledge of that defective condition. *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983) (citing *Adam Dante Corp. v. Sharpe*, 483 S.W.2d 452, 455 (Tex. 1972)). Moreover, if the dangerous condition existed for a long enough period for the owner to have discovered it upon reasonable inspection, constructive knowledge is imputed. *See CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000).

Joel Griffith, director of human resources for Mass Marketing, testified that around the Fourth of July, corn is a popular item and many people would rather take the husks off the corn in the store rather than wait until they get home. Given the customers' preference, Griffith testified Mass Marketing sends out a merchandise bulletin to individual stores asking that a trash can be placed near the corn display. Griffith testified the trash can should be large enough to hold "your typical tall kitchen trash bag" so as to be open and obvious to passing customers. Griffith admitted he was not at the Super S Foods store when Durbin fell so he could not testify as to what size trash can was actually being used. However, Clem Durbin testified that after his wife tripped, he saw a store employee remove a milk crate full of corn husks from the area near where Durbin fell. There was also testimony from two other store patrons, not present on the

day of the accident, that they frequently saw milk crates, not trash cans, being used for discarded corn shucks. These witnesses stated they observed this both before the date of the accident and up until a week after the accident. In contrast, Velma Mascorro, an assistant manager at the Super S Foods store, testified for the defense that there was not a milk crate next to the corn display and that Durbin kept telling her Durbin's knee constantly gave out.

Mass Marketing argues that because there were no prior complaints or reports of injuries stemming from the condition at issue, it conclusively established Mass Marketing had no actual knowledge a defective condition existed on its premises. Mass Marketing cites to *Univ. of Tex.-Pan Am. v. Aguilar* for this proposition. *See* 251 S.W.3d 511 (Tex. 2008). The supreme court held in *Aguilar* there is not one particular test to determine actual knowledge of a defective condition, but courts may "consider whether the premises owner has received reports of prior injuries or reports of the potential danger presented by the condition." *Id.* at 513. However, the court did not hold that an absence of prior complaints or reports conclusively negates actual knowledge. *See id.*

In *Aguilar*, the plaintiff tripped over a water hose that was lying across a sidewalk. *Id.* at 512. The Corpus Christi Court of Appeals held the University's safety manual, which discussed only indoor safety, created a fact issue as to whether the University had actual knowledge the water hose created an unreasonable risk of harm. *Id.* The supreme court reversed, explaining the safety manual did not expressly discuss outdoor safety, and because the manual did not specifically identify the risk complained of, it could not be used as evidence of actual knowledge. *Id.* at 514.

Here, the Mass Marketing safety manual expressly forbids employees from leaving empty milk crates in the aisles. Griffith specifically testified this provision is in the safety

manual because empty milk crates create a tripping hazard. Our case is distinguishable from *Aguilar* because here, the safety manual did identify the specific risk complained of and the jury was allowed to take it into consideration.

We hold the evidence supports the reasonable inference that Mass Marketing had knowledge small crates create a tripping hazard, and therefore, a defective condition that created an unreasonable risk of harm. Any inconsistencies in the evidence were apparently resolved in Durbin's favor by the jury. Also, because Clem testified the crate in question had corn husks in it, it was reasonable for the jury to conclude the crate was in that position long enough for Mass Marketing to discover the defective condition upon reasonable inspection and remove it.

We therefore hold the evidence is legally and factually sufficient to support the jury's finding that Mass Marketing had knowledge of the defective condition.

*Proximate Cause*

Mass Marketing next contends the evidence is insufficient to prove Mass Marketing proximately caused Durbin's injuries by failing to exercise reasonable care to reduce or eliminate a defective condition on its premises that posed an unreasonable risk of harm.

A plaintiff in a premises liability action must prove the act or omission by the landowner proximately caused the plaintiff's injury. *See W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 552 (Tex. 2005). Proximate cause has two elements: cause in fact and foreseeability. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 774 (Tex. 2010). For cause in fact to exist, the defendant's act or omission must be "a substantial factor in causing the injury and without which the injury would not have occurred." *Id.* at 774.

Here, Clem's testimony was some evidence that Durbin tripped over the milk crate next to the corn display. Moreover, there was evidence the accident was foreseeable because the

safety manual forbids employees from leaving milk crates in the aisles because, according to Griffith, they create a tripping hazard. Although Durbin testified she did not remember the fall, and Clem testified he did not see the empty milk crate until after his wife fell and a Super S Foods employee removed it, there was testimony that Super S Foods frequently used empty milk crates as a trash container for discarded corn husks both before and after the accident. It was within the jury's purview to resolve these inconsistencies, and they did so in favor of Durbin.

Mass Marketing argues that because Durbin has been diagnosed with cataracts, vertigo, an "unsteady gait," and has fallen in the past, she fell because of these medical conditions and not because she tripped over a milk crate. Additionally, Mass Marketing contends it was not the proximate cause of Durbin's injuries because evidence was introduced showing Durbin fell again after the accident at Super S Foods and before she first saw Dr. Steffen. Dr. Steffen testified the leg fracture was related to a fall, but he could not say which fall. When questioned as to why Durbin's tibia fracture did not show up on the x-ray in the ER but did show up a week later on the MRI, Dr. Steffen said that sometimes nondisplaced fractures do not show up on regular x-rays and can be seen only on an MRI. Dr. Steffen opined that because Durbin complained of pain at the site of the fracture in the ER immediately after the accident, he believed the fracture occurred during the fall at the Super S Foods, and not during Durbin's subsequent fall.

Again, when presented with this evidence, it was up to the jury to resolve the inconsistencies, and they did so in favor of Durbin. Accordingly, we hold the evidence is legally and factually sufficient to enable a reasonable and fair minded jury to find that Mass Marketing proximately caused Durbin's injuries.

***Admission of Affidavits***

In its third issue, Mass Marketing contends the trial court erred in admitting medical service affidavits and the accompanying medical bills, and the evidence is insufficient to support the jury's award of damages.

*Admissibility of Medical Service Affidavits*

The decision to admit or exclude evidence is within the trial court's discretion. *Nat'l Liab. & Fire Ins. Co. v. Allen*, 15 S.W.3d 525, 527–28 (Tex. 2000). When reviewing a trial court's evidentiary decisions, we use an abuse of discretion standard. *Id.* at 527–28. "The test for abuse of discretion is whether the trial court acted without reference to any guiding rule or principles." *Larson v. Downing*, 197 S.W.3d 303, 304–05 (Tex. 2006) (quoting *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex. 1996)). Even if we determine the trial court abused its discretion in making its evidentiary ruling, it is still subject to a harmless error analysis, and we will not reverse the trial court's judgment unless the ruling probably caused the rendition of an improper judgment. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 906 (Tex. 2000).

Mass Marketing contends the medical affidavits admitted into evidence did not meet the requirements of section 18.001 of the Texas Civil Practice and Remedies Code. To comply with the statute, an affidavit must be sworn, made by the person who either provided the service or the person in charge of the records showing the service provided, and have an itemized receipt of the service and charge. TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(c) (West 2008). Unless a controverting affidavit is filed, the affidavit is sufficient evidence for a finding of fact that the amount charged for the service was reasonable or necessary at the time it was provided. *Id.* § 18.001(b). Section 18.002 sets forth a sample form for the affidavit, but also provides that use

of the form is not exclusive as long the affidavit substantially complies with section 18.001. *Id.* § 18.002(c).

In reviewing the affidavits at issue, we hold they substantially comply with section 18.001. Each affidavit was sworn, made by the person who either provided the service or the person in charge of the records showing the service provided, itemized, and facially established the expenses were reasonable and necessary. Although the affidavits do not conform to the exact language and form of the sample affidavit in section 18.002, they do comply with the three statutory requirements. *See id.* § 18.001(c). By the specific terms of the statute, the sample affidavit is just that, a sample, and as long as the affidavit substantially complies with section 18.001, it is sufficient evidence to prove reasonableness and necessity of medical services. *See id.* § 18.002(c). Accordingly, we hold the trial court did not abuse its discretion in admitting the affidavits and their corresponding medical bills.

*Damages*

Using the same standard of review set forth above to review the legal and factual sufficiency of the evidence to support the jury's award of damages, we hold the evidence is sufficient to support the jury's damage award.

To prove the reasonableness and necessity of medical services, a plaintiff may either submit an affidavit or provide expert testimony. *Whitaker v. Rose*, 218 S.W.3d 216, 223 (Tex. App.—Houston [14th Dist.] 2007, no pet.) (citing *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 840 (Tex. 1997)). Unless a controverting affidavit is filed, an affidavit that complies with section 18.001 "is sufficient evidence to support a finding of fact by judge or jury that the amount charged was reasonable or that the service was necessary." TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b). This court has previously explained that affidavits admitted under

section 18.001 are "sufficient evidence to support a finding of fact." *Barrajas*, 945 S.W.2d at 209 (quoting TEX. CIV. PRAC. & REM. CODE ANN. § 18.001(b)). Other courts of appeals have also determined that an uncontroverted affidavit provides the fact finder with legally sufficient evidence to establish that the medical expenses were reasonable and necessary at the time. *See, e.g., Gutierrez v. Martinez*, No. 01-07-00363-CV, 2008 WL 5392023, at *9 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, no pet.) (mem. op.); *Hong v. Bennett*, 209 S.W.3d 795, (Tex. App.—Fort Worth 2006, no pet.).

Mass Marketing did not file controverting affidavits. Although an uncontroverted affidavit is not conclusive evidence of the reasonableness and necessity of the medical expenses and the jury is not required to award any or all of the damages found in the affidavits, the jury may do so if it chooses. *Barrajas*, 945 S.W.2d at 208–09. Moreover, Durbin produced not only the affidavits, but introduced expert testimony from Dr. Steffen that Durbin's medical expenses were reasonable and necessary. Accordingly, Durbin's uncontroverted affidavits, particularly when considered with Dr. Steffen's testimony, are sufficient evidence to support the jury's damage award.

### *Jury Argument*

Finally, Mass Marketing contends Durbin's attorney made an incurable jury argument during his closing.

To preserve error for appellate review of an improper jury argument, a timely objection must be made and subsequently overruled. *Living Ctrs. of Tex., Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008) (per curiam). Because retraction by counsel or an instruction by the court can usually cure any harm, the only time an appellate court may review an unpreserved challenge to an improper jury argument is in the rare instance when the argument is deemed incurable. *Id.*

If incurable, the complaining party is not required to show an objection at trial but must show retraction by counsel or an instruction by the court would not have cured the alleged harm. *Id.* To be incurable, the argument must have been so extreme that a "juror of ordinary intelligence could have been persuaded by that argument to agree to a verdict contrary to that to which he would have agreed but for such argument." *Phillips v. Bramlett*, 288 S.W.3d 876, 883 (Tex. 2009) (quoting *Goforth v. Alvey*, 271 S.W.2d 404, 404 (Tex. 1954)).

Mass Marketing cites twenty-six comments made by Durbin's attorney during closing argument, alleging the comments were harmful and prejudicial, and could not have been cured by a retraction or an instruction. However, Mass Marketing failed to make a timely objection to any of the comments, and therefore must show one or more were incurable. In its brief, Mass Marketing alleges all of the comments constitute incurable jury argument, but fails to cite any authority to support its contention or even explain how the comments were incurable. In other words, Mass Marketing provides no argument in support of its contentions. Rule 38.1(i) of the Texas Rules of Appellate Procedure requires a brief to include a "clear and concise argument for the contentions made with appropriate citations to authorities." TEX. R. APP. P. 38.1(i). Because Mass Marketing has inadequately briefed this issue by failing to provide any argument or citation to authority, nothing is presented for our review. *See id*; *In re B.L.*, No 04-05-00621-CV, 2006 WL 1895450, at *5 (Tex. App.—San Antonio July 12, 2006, pet. denied) (mem. op.) (citing *Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284–85 (Tex. 1994) (holding appellate court has discretion to deem points of error waived due to inadequate briefing)). Accordingly, we overrule Mass Marketing's fourth issue.

**CONCLUSION**

Based on the foregoing, we overrule Mass Marketing's issues and affirm the trial court's judgment.

Marialyn Barnard, Justice