No. 04-97-00325-CV



EXXON CORPORATION,


Appellant



v.



Omar GARZA,


Appellee



From the 229th Judicial District Court of Duval County, Texas


Trial Court No. 15,568


Honorable Ricardo H. Garcia, Judge Presiding



ORDER



 Appellee's motion for rehearing is DENIED. However, the clerk of this court is directed to
issue a corrected opinion, reflecting that Justice Duncan concurs in the judgment only.


 It is so ORDERED on this 3rd day of November, 1998.



 Tom Rickhoff, Justice



 IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court
on this 3rd day of November, 1998.


 

 Herb Schaefer, Clerk











No. 04-97-00325-CV



EXXON CORPORATION,


Appellant



v.



Omar GARZA,


Appellee






From the 229th Judicial District Court of Duval County, Texas 


Trial Court No. 15,568


Honorable Ricardo H. Garcia, Judge Presiding



Opinion by: Tom Rickhoff, Justice


Sitting: Phil Hardberger, Chief Justice

 Tom Rickhoff, Justice

 Sarah B. Duncan, Justice (concurring in the judgment only)


Delivered and Filed: September 23, 1998


REVERSED AND RENDERED


 Omar Garza sued Exxon Corporation for injuries he sustained on one of its gas leases. In
accordance with the jury's verdict, the trial court signed a judgment awarding Garza $494,385.
Because we conclude that the evidence is legally insufficient to establish that Exxon had actual or
constructive knowledge of an unreasonably dangerous condition on the lease, we reverse the trial
court's judgment and render judgment that Garza take nothing from Exxon.

Factual and Procedural Background


 Exxon owns and operates a natural gas lease, known as the Yates Lease, in Duval County.
Omar Garza worked for EOTT Energy Corporation as a truck driver. His duties required him to go
to the Yates Lease almost daily to pump gas condensate from a battery of tanks into a tanker truck
and haul the condensate to a nearby refinery. One morning, Garza arrived at the lease, hooked up
a hose to a unit that pumps the condensate into his tanker, and returned to his truck to complete some
paperwork. While sitting in the truck, Garza glanced at his rearview mirror and saw a fire on an
electrical transformer. Remembering that he had smelled strong gas fumes before he hooked up his
hose and surmising that the combination of the fumes and the fire could create an explosion, Garza
"panicked." As he hurriedly attempted to get out of the truck, he slipped and fell to the ground,
injuring his right knee. He then disconnected his hose and left in his truck. When he arrived at the
refinery, he called an Exxon employee to report the fire.

 The Exxon employee testified that when he arrived at the lease approximately forty-five
minutes later, he saw a three-inch flame on the transformer. He also stated that the transformer was
approximately 120-feet from the pumping unit, he did not smell gas fumes, and he saw no indication
that a larger fire had existed--there was no charring on the pole, the cross-arms, or the transformer.
This testimony was supported by the testimony of other Exxon employees who were at the Yates
Lease on the day in question. According to Garza, however, the fire on the transformer was two-
to four-feet high and the transformer was approximately fifteen to twenty-five feet from the pumping
unit. He also claimed that when he returned to the lease a few hours after the incident, the
transformer appeared to be charred.

 Garza and his wife filed suit against Mack Truck, which manufactured the truck from which
Garza fell; Industrial Electrical Corporation (IEC), which installed the transformer; and Exxon.
Aetna Casualty and Surety Company intervened, asserting that it had a subrogation interest in the
Garzas' recovery to the extent of workers' compensation benefits it had paid to Omar Garza. After
IEC settled with the Garzas and Mack Truck settled with Aetna, the case proceeded to trial with
Exxon as the only defendant. The case against Exxon was submitted to the jury on both an ordinary
negligence theory and a premises liability theory. The jury returned a verdict finding that Exxon was
liable under both theories, that Garza's negligence contributed 15% to his injuries, that Garza's
damages were $758,100, and that Garza's wife was not entitled to any compensation.

 On January 16, 1997, the trial court signed a document entitled "Final Judgment." The
judgment recites that "the parties" announced that all matters in controversy had been settled,
"whereby Plaintiffs, OMAR GARZA AND ELENA GARZA, should have and take nothing of and
from Defendant, INDUSTRIAL ELECTRICAL CORPORATION OF TEXAS D/B/A IEC OF
TEXAS." The judgment concludes as follows:

 IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED by the
Court that the Plaintiffs, OMAR GARZA AND ELENA GARZA, have and take
nothing of and from Defendant, INDUSTRIAL ELECTRICAL CORPORATION OF
TEXAS D/B/A IEC OF TEXAS, and all costs of court, incurred herein are to be
taxed against party incurring same.


 All relief not specifically granted herein is denied.


 On January 21, 1997, the trial court signed another document entitled "Final Judgment."
Unlike the January 16 judgment, the January 21 judgment includes the standard recitals typically
made in judgments rendered after a jury trial, such as recitals that the parties appeared and
announced ready, the jury was sworn, and the case was submitted to the jury. The judgment also
states that IEC and Mack Truck did not appear because they had previously been dismissed as
defendants pursuant to settlement agreements. The judgment then awards Garza damages in
accordance with the jury's verdict. The total amount of damages assessed against Exxon was
$494,385--the $758,100 damages found by the jury, reduced by $113,715 for Garza's 15%
contributory negligence, and further reduced by the $150,000 settlement paid by IEC. The court
refused to deduct the $33,000 paid by the other settling defendant, Mack Truck. The judgment
concludes with the language, "The Court DENIES all relief not granted in this judgment."

Issues on Appeal


 On appeal, Exxon raises five issues: 1) the January 21 judgment should be set aside as a
nullity; 2) the trial court erred by submitting the case to the jury on an ordinary negligence theory
because the case is governed by premises liability principles; 3) the trial court erred by submitting
the case to the jury on the premises liability theory because Garza did not plead that theory; 4) the
evidence is legally insufficient to establish the elements of a premises liability case; and 5) the trial
court erred by failing to give Exxon credit for the settlement amount paid by Mack Truck.

Final Judgment


 Exxon asserts that the first judgment controls and the second judgment is a nullity. Because
the first judgment does not grant Garza any damages from Exxon and states that all relief not granted
is denied, Exxon argues that it owes Garza nothing.

 There can be only one final judgment in a cause. See Tex. R. Civ. P. 301. The supreme court
has held that the entry of a second judgment in the same case does not automatically vacate the first
judgment, and if there is nothing in the record to show that the first judgment was vacated, the
second judgment is a nullity. See Mullins v. Thomas, 150 S.W.2d 83, 84 (Tex. 1941). The second
judgment need not expressly state that the first judgment is vacated, although that is the preferable
procedure. See City of West Lake Hills v. State, 466 S.W.2d 722, 726 (Tex. 1971); see also Azbill
v. Dallas County Child Protective Servs. Unit, 860 S.W.2d 133, 139 (Tex. App.--Dallas 1993, no
writ) (harmonizing the Mullins and City of West Lake Hills lines of cases); but cf. Check v. Mitchell,
758 S.W.2d 755, 756 (Tex. 1988) (holding that "any change, whether or not material or substantial,
made in a judgment while the trial court retains plenary power, operates to delay the commencement
of the appellate timetable until the date the modified, corrected or reformed judgment is signed").
Because nothing in the record of this case indicates that the trial court intended to vacate the January
16 judgment, Exxon argues that the January 21 judgment is a nullity.

 Exxon's argument hinges on its assertion that the January 16 judgment amounts to a final
judgment. See Crown Constr. Co. v. Huddleston, 961 S.W.2d 552, 560 (Tex. App.--San Antonio
1997, no pet.) ("Mullins and its progeny deal with cases in which there are two purportedly final
judgments."). To be final, a judgment must dispose of all parties and issues. Martinez v. Humble
Sand & Gravel, Inc., 875 S.W.2d 311, 312 (Tex. 1994). Ordinarily, a court may presume that a
judgment is final when it is entered after a conventional trial, is labeled "final," and contains a
statement that all relief not granted is denied. See Mafrige v. Ross, 866 S.W.2d 590, 592 (Tex.
1993); North E. Indep. Sch. Dist. v. Aldridge, 400 S.W.2d 893, 897-98 (Tex. 1966). This
presumption only applies, however, in the absence of a contrary showing in the record. See
Aldridge, 400 S.W.2d at 898; see also Martinez, 875 S.W.2d at 313-14.

 The record in this case demonstrates that the finality presumptions should not apply to the
January 16 judgment. It is apparent from reading the body of that judgment that its purpose was to
render a take nothing judgment only against IEC, which had settled with the Garzas. Exxon is not
even mentioned in the body of the judgment. This purpose becomes even clearer when we consider
that the judgment was signed after the jury had rendered a verdict against Exxon. The judgment
contains no indication that the trial court intended to disregard the jury's verdict. See Tex. R. Civ.
P. 301 ("The judgment of the court shall conform to the pleadings, the nature of the case proved and
the verdict ....").

 Because the January 16 judgment, properly construed, disposed of only one party to the case,
it was interlocutory. Accordingly, the January 21 judgment, which disposed of the remaining party
and claims, is not a nullity. Upon the signing of the January 21 judgment, all prior interlocutory
orders, including the January 16 judgment, merged into it, creating only one final and appealable
judgment. See Woosley v. Smith, 925 S.W.2d 84, 87 (Tex. App.--San Antonio 1996, no writ).

Premises Liability


 As noted above, the case was submitted to the jury on two theories--ordinary negligence and
premises liability. The jury found Exxon liable under both theories. Exxon objected to the
submission of ordinary negligence below and argues on appeal that Garza's only potential avenue
of recovery is through the premises liability theory.

 An owner or occupier of land has a duty to use reasonable care to keep the premises in a safe
condition. See Redinger v. Living, Inc., 689 S.W.2d 415, 417 (Tex. 1985). The duty to keep the
premises in a safe condition may subject the owner to liability for negligence in two situations: 1)
those arising from a premises defect, or 2) those arising from an activity. See id. When injuries
result from an activity on the premises, it is proper to submit the case on an ordinary negligence
theory. See Clayton W. Williams, Jr., Inc. v. Olivo, 952 S.W.2d 523, 529 (Tex. 1997). But if the
injuries result from a premises defect, a jury finding of ordinary negligence will not support a
judgment against the premises owner or occupier. See id. at 529-30.

 To recover on a negligent activity theory, the plaintiff must establish that he was injured by
or as a contemporaneous result of the activity itself rather than by a condition created by the activity.
See Keetch v. Kroger Co., 845 S.W.2d 262, 264 (Tex. 1992). "At some point, almost every artificial
condition can be said to have been created by an activity." Id. Because our supreme court has
repeatedly "decline[d] to eliminate all distinction between premises conditions and negligent
activities," id., we must determine whether Garza's injuries resulted from a condition or an activity.
See also Dallas Market Ctr. Dev. Co. v. Liedeker, 958 S.W.2d 382, 385 (Tex. 1997).

 Garza claims that Exxon was negligent in allowing IEC to install the wrong kind of
connections in the transformers on the Yates Lease. According to Garza, the transformer fire that
precipitated his fall was caused by one of the improper connections. He was not injured by or as a
contemporaneous result of the negligent installation. Therefore, Garza could only recover damages
from Exxon by pleading and proving a premises liability cause of action.

Sufficiency of the Evidence


 The elements of a premises liability cause of action are: 1) the owner/operator's actual or
constructive knowledge of some condition on the premises; 2) the condition of the premises posed
an unreasonable risk of harm to the plaintiff; 3) the owner/operator failed to exercise ordinary care
to protect the plaintiff from the risk; and 4) the owner/operator's failure was a proximate cause of
injury to the plaintiff. See id.; Keetch, 845 S.W.2d at 264. Exxon argues that the evidence is legally
insufficient to satisfy any of these elements. We will first review the record to determine if there is
any probative evidence of actual or constructive knowledge, i.e., whether Exxon knew or reasonably
should have known of an unreasonably dangerous condition on the Yates Lease. See Liedeker, 958
S.W.2d at 385.

 In conducting our review, we will consider the evidence in the light most favorable to Garza,
the prevailing party, indulging every reasonable inference in his favor. See Associated Indem. Corp.
v. Cat Contracting, Inc., 964 S.W.2d 276, 285-86 (Tex. 1998). If there is any evidence of probative
force to support the jury's finding of actual or constructive knowledge we must uphold the jury's
verdict. See ACS Investors, Inc. v. McLaughlin, 943 S.W.2d 426, 430 (Tex. 1997).

 Garza presented the expert testimony of Austin Bollen, a consulting electrical engineer who
had worked in the hydrocarbon industry. He testified that the fire was caused by overheating at the
point where aluminum wire was connected to a bronze assembly on the transformer. To prevent this
problem, a particular type of connection, called a "compression connection," should have been used
to join the bronze assembly and the aluminum wire. According to Bollen, the connection that was
used on the transformer was improper. He claimed that the problems associated with connecting
aluminum to bronze are well known among electrical engineers and he stated that if Exxon did not
install the transformers itself, it should have specified that the contractor doing the installation use
a compression connection. Given that improper connections were used on the Yates Lease, Bollen
believed Exxon should have inspected the connections with an infrared scanner to determine if they
were overheating.

 Exxon presented testimony that IEC is a reputable company that specializes in line repairs
and installing transformers. An Exxon electrician testified that when IEC installs transformers,
Exxon relies on IEC's expertise and does not tell IEC what type of connections to use; Exxon "[j]ust
tell[s] [IEC] what needs to be done and they go up there and do it." An Exxon electrical tech
foreman, James McAda, was in charge of seeing that the Yates installation was accomplished. When
asked who designed the transformer installation, he testified, "I guess you could say I did"--he
ascertained where the transformers should be placed, determined what size transformers were
needed, purchased the appropriate transformers, and handed them over to IEC for installation. He
supervised IEC's work in the sense that he "told them what [he] wanted done." McAda was never
asked about the connections used at the Yates Lease or whether he specified that a particular
connection be used, and he gave no additional explanation regarding how he supervised IEC's work
or what instructions he gave IEC.

 From this review of the record, it is apparent that there is no evidence that Exxon had actual
knowledge that an improper connection was used on the transformer. The evidence also indicates
that the only type of inspection that would have revealed the potential for a fire in the transformer
was a periodic infrared scanning of the connections. Importantly, Bollin only advocated this type
of inspection because faulty connections were used. Since there is no evidence that Exxon knew
improper connections had been used, this duty of inspection was not triggered.

 Garza theorizes that Exxon had constructive knowledge of the risk associated with the
connections because Bollen testified that the problems associated with using an improper connection
between aluminum and bronze were well-known among electrical engineers. Since Exxon had its
own electricians, Garza asserts that the jury could reasonably infer that Exxon should have known
about these problems and should have insisted that compression connections be used.

 While it may have been reasonable for the jury to infer that Exxon was negligent in failing
to specify that compression connections be used, this inference does not amount to constructive
knowledge of a dangerous condition on the Yates Lease. There is no evidence to indicate that Exxon
had any reason to believe IEC failed to install proper connections. All the testimony regarding IEC
reflects that it is a reputable company with experience and expertise in installing transformers. Thus,
it is not reasonable to infer that Exxon should have known that an improper connection was installed
simply because it failed to specify that a proper connection be installed. Cf. Olivo, 952 S.W.2d at
528 (holding, in reliance on section 414 of the Restatement of Torts, that an owner who superintends
a job is liable for failing to remedy a dangerous condition created by the contractor's careless work
or for failing to prevent a contractor from doing work in an unreasonably dangerous manner if the
owner knows or should know the work is being done or has been done in this manner).(1)

 We conclude that the evidence is legally insufficient to establish the first element of a
premises liability cause of action--that Exxon had actual or constructive knowledge of a dangerous
condition on the Yates Lease. Because of this conclusion, we find it unnecessary to address Exxon's
remaining issues regarding lack of evidence, lack of proper pleadings, and lack of a settlement credit.
The judgment of the trial court is reversed and judgment is rendered that Garza take nothing.


 Tom Rickhoff, Justice

PUBLISH



1. Garza suggests that the fact that IEC installed the transformers is irrelevant because Exxon had a nondelegable
duty to maintain the premises in a safe condition. The cases cited by Garza for this proposition are not applicable to
this situation because they do not involve premises defects. See Scott Fetzer Co. v. Read, 945 S.W.2d 854 (Tex.
App.--Austin 1997, writ granted); Byrd v. Skyline Equip. Co., 792 S.W.2d 195 (Tex. App.--Austin 1990), writ denied
per curiam, 808 S.W.2d 463 (Tex. 1991). We recognize, however, that scholars have described the duty to maintain
real property in a safe condition as being nondelegable. See 5 Fowler V. Harper et al., The Law of Torts § 26.11&
n. 62, at 85-88 (duty to keep premises safe for invitees is nondelegable and cannot be avoided by employing an
independent contractor) (2d ed. 1986); W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 71,
at 511-12 (5th ed. 1984) (same); see also Restatement (Second) of Torts § 422 (1965) (possessor of land who
entrusts construction or repair work to an independent contractor is subject to the same liability "as though he had
retained the work in his own hands" for injuries caused by the unsafe condition of the structure). Neither Exxon nor
Garza has addressed these authorities in the trial court or in this court. Furthermore, we are precluded from imposing
a nondelegable duty in a manner inconsistent with controlling authority from the supreme court. Our supreme court
has insisted that the four premises defect elements, including actual or constructive knowledge, be established in every
premises defect case. See, e.g., Olivo, 952 S.W.2d at 528-29; see also Keetch, 845 S.W.2d at 265 (an owner's creation
of a dangerous condition does not establish, as a matter of law, knowledge that the dangerous condition exists); cf.
Baptist Mem'l Hosp. Sys. v. Sampson, 41 Tex. Sup. Ct. J. 833 (May 21, 1998) (rejecting this court's attempt to impose
a nondelegable duty on hospitals for the negligence of emergency room physicians who are independent contractors).
Therefore, regardless of whether Exxon's duty was nondelegable, Garza was still required to establish Exxon's
knowledge of the dangerous condition.


Return to
4th Court of Appeals Opinions