

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| BRYCE J. WALLACE, ELITE DRILLERS CORPORATION, and Intervenor UNITED FIRE & CASUALTY COMPANY and its parent, UNITED FIRE GROUP, INC., | § § § | No. 08-17-00248-CV Appeal from the 143rd District Court |
| Appellants, | § | of Reeves County, Texas |
| v. | § | (TC# 15-04-21001-CVR) |
| ENERGEN RESOURCES CORPORATION, | § | |
| Appellee. | § | |

**O P I N I O N**

Appellants Bryce J. Wallace, Elite Drillers Corporation (Elite), and United Fire & Casualty

Company and its parent, United Fire Group, Inc. (collectively, Wallace and Elite[1] or claimants)

appeal from an order granting a take-nothing summary judgment on their negligence claims against

Appellee Energen Resources Corporation (Energen).[2] The stated basis of the order is that Energen

---

[1] Appellant Bryce Wallace seeks personal injury damages while Appellant Elite Drillers Corporation (Elite) seeks related property damages. United Fire & Casualty Company and its parent, United Fire Group, Inc. (Collectively, United Fire Group), insured Elite at the time of the incident that is at issue here. United Fire Group intervened in the court below to assert a claim for subrogation and also joined Appellants in briefing in this Court. We note that United Fire Group was not involved in any of the conduct at issue here and raised no arguments on appeal separate from those raised by Wallace and Elite. Thus, we conclude that United Fire's subrogation claim stands or falls with Wallace and Elite's claims and, therefore, requires no separate discussion in this opinion. To simplify our discussion, we will refer to all claims collectively as claims of Wallace and Elite unless further detail is warranted.

[2] Originally, Appellants sued Appellee Energen and several other defendants for negligence, trespass to chattels and gross negligence. Except for the negligence claim asserted against Energen, all other claims and parties were dismissed or nonsuited prior to this appeal.

is not liable under Chapter 95 of the Texas Civil Practice and Remedies Code because Energen did not exercise or retain control over the work performed by Wallace and Elite as a matter of law. On appeal, Wallace and Elite assert: (1) that Energen failed to conclusively establish that Chapter 95 applied to their claims of negligence; and (2) even if Chapter 95 does apply such that the evidentiary burden shifted to claimants, they assert that a genuine issue of material fact exists as to whether Energen exercised or retained some control over the work they performed thereby precluding summary judgment. We reverse and remand.

## I. BACKGROUND

Energen owns a mineral leasehold estate in Reeves County, Texas. In September 2013, Energen received regulatory approval to drill its Langley 2-36 1H oil and gas well. (Oil Well or Langley Well). Energen contracted with Nabors Drilling Technologies USA, Inc. (Nabors) to drill the well on its property.[3] Pursuant to their drilling agreement, Nabors furnished equipment and labor to perform drilling services under the "direction, supervision and control" of Energen, and Energen assumed all risk, responsibility and liability for the drilling of the Oil Well and its operations. Based on geological data, Energen planned for Nabors to drill the Oil Well to a total vertical depth of 10,945 feet. On a daily basis, Energen received reports of well activity, events and operations.

To assist with the drilling and operations of the Oil Well, Energen contracted with Dubose Drilling, Inc. (Dubose) to drill a nearby Water Well on its property to a depth of approximately 500 to 550 feet. Energen set the Water Well site approximately 500 feet from the Oil Well. Initially, Dubose drilled the Water Well to the target depth but found no water. Energen then

---

[3] The record shows that Nabors initially contracted with Enduring Resources, LLC, a predecessor in interest to Talisman Energy USA, Inc. Thereafter, Nabors, Talisman, and Energen entered into an agreement whereby Talisman assigned all its rights and certain obligations of the agreement to Energen.

suspended any further drilling. But later, after further input from their in-house geologists, Energen decided it wanted to resume drilling the Water Well to a deeper depth. Geologists recommended drilling to a depth of 800 feet based on their research of known aquifers in the area. When contacted for further drilling, Dubose informed Energen it had already scheduled its rig for another job, but it offered to locate another contractor.

Dubose subcontracted with Elite to complete the drilling of the Water Well. Working for Elite, Wallace was assigned to supervise the work of completing Energen's Water Well. After drilling to a depth of approximately 900 feet, Elite workers confirmed they found an acceptable amount of water in the aquifer that had been targeted and they were instructed to complete the well. While Elite workers completed the Water Well, Energen's drilling activity continued on the nearby Oil Well.

On January 14, 2014, the Oil Well experienced a gas kick that resulted in gas circulating to the surface causing workers to shut in the well with mud. For days afterwards, workers noted continuing instances of lost circulation and lost returns while the well remained operating and otherwise flowing. Meanwhile, on the nearby Water Well, Wallace continued supervising Elite workers as they completed casing of the water well with a steel liner, welded joints, and packed in gravel.

On January 17, 2014, while completing the Water Well, Wallace noticed air pressure increasing when they ran the drill pipe to a depth of nearly 500 feet to blow out drilling mud. After shutting off the air compressor, Wallace soon realized that the increased pressure originated not from Elite's equipment but from natural gas arising from down hole. Reacting, he yelled for everyone to run. Soon, the gas exploded into a ball of fire that engulfed Wallace and the well site generally. Following the explosion, natural gas continued flowing and the Water Well remained

3

on fire for several days.  From the fire, Wallace sustained severe burns to his body.  Elite sustained property damage to its rig and equipment that resulted in lost business.

Together, Wallace and Elite filed suit against Energen and other parties seeking recovery for personal injury and property damages proximately caused by the explosion and fire.[4]  By their suit, they alleged that Energen's negligent drilling of the nearby Oil Well caused high volumes of natural gas to enter the aquifer from which Wallace and Elite were drilling to complete the Water Well.  They further alleged that "the high volumes of natural gas were not present in the aquifer as a result of natural reasons, but such presence [was] directly connected to the drilling of the Oil Well and the actions and/or omissions of those involved in the drilling of the Oil Well."

Energen filed a traditional motion for partial summary judgment asserting that Chapter 95 of the Texas Civil Practice and Remedies Code applied to limit liability for claims against a property owner (i.e., Energen) for personal injury or property damages to a subcontractor (i.e., Elite) or an employee of a subcontractor (i.e., Wallace) that arose from the condition or use of an improvement to real property (i.e., the Water Well and Oil Well).  Energen contended that Chapter 95 applied given that Wallace and Elite sought recovery for injuries and damages caused by the fire that occurred while they were drilling the Water Well.  Energen further claimed that—to the extent that plaintiffs claimed that their injuries were caused by a condition of Energen's Oil Well and not the Water Well—that Chapter 95, nonetheless, applied to those claims.

Responding, Wallace and Elite asserted that by relying on Chapter 95, Energen asserted an affirmative defense on which it carried the evidentiary burden, yet it failed to conclusively establish the factual basis required to establish that the defense applied.  Relying on *Ineos USA, LLC v. Elmgren*, 505 S.W.3d 555, 567 (Tex. 2016), they asserted there was no dispute that their

---

[4] Wallace's suit was filed against Energen, Nabors Drilling, Dubose Drilling, New Prospect Company, and United Fire & Casualty Company.  The suit included claims for negligence, trespass to chattels and gross negligence.

4

work did not in any way involve the constructing, repairing, renovating or modifying of the Oil Well, which was the improvement which they alleged was either defective or negligently used. In the alternative, Wallace and Elite further argued that, even if Chapter 95 applied, that genuine issues of material fact existed as to the elements required to establish an exception to the statute's liability limitation.

In ruling on the motion, the trial court agreed with Energen and ordered that Wallace and Elite take nothing on their negligence claims against Energen. This appeal followed.

## II. DISCUSSION

Wallace and Elite present two related issues contending the trial court erred in granting summary judgment. In Issue One, they contend that Energen failed to meet its evidentiary burden of establishing that Chapter 95 applied as a matter of law. In Issue Two, they argue in the event that Chapter 95 does apply, that a factual issue precludes judgment on the sole statutory element challenged by Energen's motion that would be required to establish an exception to liability protection—that is, whether Energen exercised or retained some control over the manner in which Wallace and Elite performed their work.

We begin with the threshold question of whether Energen conclusively established the application of Chapter 95 in this instance.

### A. Chapter 95

In Issue One, Wallace and Elite argue that Chapter 95 does not apply to their claims against Energen. When construing a statute, we necessarily begin with its language. *State v. Shumake*, 199 S.W.3d 279, 284 (Tex. 2006). By its terms, Chapter 95 applies to a claim:

    (1) against a property owner, contractor, or subcontractor for personal injury, death, or property damage to an owner, a contractor, or a subcontractor or an employee of a contractor or subcontractor; and

5

(2) that arises from the condition or use of an improvement to real property where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement.

TEX. CIV. PRAC. & REM. CODE ANN. § 95.002.

To establish liability, section 95.003 provides as follows:

A property owner is not liable for personal injury, death, or property damage to a contractor, subcontractor, or an employee of a contractor or subcontractor who constructs, repairs, renovates, or modifies an improvement to real property, including personal injury, death, or property damage arising from the failure to provide a safe workplace *unless*:

(1) the property owner exercises or retains some control over the manner in which the work is performed, other than the right to order the work to start or stop or to inspect progress or receive reports; and

(2) the property owner had actual knowledge of the danger or condition resulting in the personal injury, death, or property damage and failed to adequately warn.

*Id.* § 95.003 (emphasis added).

Relevant to this case, Chapter 95 applies only to claims of negligence asserted against a property owner for personal injury or property damages to a subcontractor or employee of a subcontractor "that arise[ ] from the condition or use of an improvement to real property where the … subcontractor constructs, repairs, renovates, or modifies the improvement." *Id.* §§ 95.001, 95.002. The statute itself defines "claim," to mean "a claim for damages caused by negligence, including a counterclaim, cross-claim, or third party claim." *Id*. § 95.001(1). "Property owner" is defined to mean a person or entity that owns real property primarily used for commercial or business purposes. *Id*. § 95.001(3).

In construing the statute, the Supreme Court of Texas highlighted the interplay of Chapter 95's key provisions by describing that, "[t]he heart of the chapter, sections 95.002 and .003, establish[ ] [the statute's] applicability and limitations on a property owner's liability for personal injury, death, or property damage to independent contractors, respectively." *Abutahoun v. Dow*

*Chemical Co.*, 463 S.W.3d 42, 46 (Tex. 2015) (citing TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.002–.003). When section 95.002 makes Chapter 95 applicable to claims against a property owner that arise from the condition or use of an improvement to real property, the sole means of recovery is by satisfying section 95.003. *See Abutahoun*, 463 S.W.3d at 51. When applicable, Chapter 95 affords liability protection to a property owner by imposing heightened evidentiary requirements on claimants to establish an entitlement to recovery.[5] *See Ineos*, 505 S.W.3d at 561 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 95.003); *accord Abutahoun*, 463 S.W.3d at 43.

### B. Traditional Summary Judgment Standard of Review

A trial court's granting of summary judgment is reviewed de novo. *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 278 (Tex. 2018). A party moving for traditional summary judgment has the burden to prove that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *see also ConocoPhillips Co. v. Koopmann*, 547 S.W.3d 858, 865 (Tex. 2018). The movant must establish its right to summary judgment on the grounds expressly presented to the trial court by conclusively proving all elements of the movant's cause of action or defense as a matter of law. *Rhone-Poulenc, Inc. v. Steel*, 997 S.W.2d 217, 223 (Tex. 1999). A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence. *See City of Keller v. Wilson*, 168 S.W.3d 802, 815 (Tex. 2005).

---

[5] For example, when Chapter 95 applies, a property owner is not liable unless it retained control over the manner in which the work was performed and had actual knowledge of the condition or conditions resulting in the injury but failed to warn. TEX. CIV. PRAC. & REM. CODE ANN. § 95.003. Both the control and actual knowledge requirement must be met before the property owner will incur liability. *Oiltanking Houston, L.P. v. Delgado*, 502 S.W.3d 202, 209 (Tex.App.—Houston [14th Dist.] 2016, pet. denied) (op. on reh'g).

If the movant establishes its right to judgment as a matter of law, the burden shifts to the nonmovant to present evidence raising a genuine issue of material fact precluding summary judgment. *Ballard v. Arch Ins. Co.*, 478 S.W.3d 950, 953 (Tex.App.—Houston [14th Dist.] 2015, no pet.); *Hovorka v. Cmty. Health Sys., Inc.*, 262 S.W.3d 503, 508 (Tex.App.—El Paso 2008, no pet.). To determine if a fact issue exists, we must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all the evidence presented. *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007). We review summary judgment evidence in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *SeaBright Ins. Co. v. Lopez*, 465 S.W.3d 637, 641 (Tex. 2015).

As a property owner seeking protection, Energen shoulders the burden of establishing Chapter 95's application to plaintiffs' claims. *See Montoya v. Nichirin-Flex, U.S.A., Inc.*, 417 S.W.3d 507, 511 (Tex.App.—El Paso 2013, no pet.); *Cox v. Air Liquide America, LP*, 498 S.W.3d 686, 689 (Tex.App.—Houston [14th Dist.] 2016, no pet.) (courts construe the property owner's motion as a traditional motion for summary judgment). An owner proves the statute applies by presenting summary judgment evidence that conclusively establishes that all elements of section 95.002 have been met. *See Vanderbeek v. San Jacinto Methodist Hosp.*, 246 S.W.3d 346, 351 (Tex.App.—Houston [14th Dist.] 2008, no pet.); TEX. CIV. PRAC. & REM. CODE ANN. § 95.002. If the property owner establishes that Chapter 95 applies, the burden then shifts to the plaintiffs to establish both prongs of section 95.003—control, actual knowledge, and inadequate warning—in order to trigger the exception to a property owner's liability protection. *See Ineos*, 505 S.W.3d at 567-69.

Here, the parties do not dispute that Energen is a property owner, Elite is a subcontractor, Wallace is an employee of a subcontractor, and the claims at issue are for personal injury and property damage. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.002(1), 95.003. In a general sense, the parties also agree that the Water Well and the Oil Well involved in the incident at issue, respectively, both qualify as improvements to real property. *Abutahoun*, 463 S.W.3d at 49 (citing *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex. 1995) (the term "improvement" has been broadly defined to include "all additions to the freehold except for trade fixtures [that] can be removed without injury to the property")). But more specifically, however, regarding these two improvements, the parties are diametrically opposed as to whether the claims of negligence arose from one improvement or the other (i.e., the Oil Well or the Water Well). *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2).

## C. Complaints about Appellee's Briefing

Before reaching the threshold question of whether Energen established the applicability of Chapter 95 as a matter of law, we pause briefly to address two objections raised by Wallace and Elite about Energen's briefing on appeal.

### 1. Objection concerning the pleading of summary judgment grounds

In their reply brief, Wallace and Elite first object that Energen presented arguments in its briefing that were not presented in its motion for summary judgment contending these arguments may not be raised for the first time on appeal nor otherwise form the basis for affirming the trial court's ruling. It is well-settled that "a motion for summary judgment must itself expressly present the grounds upon which it is made." *McConnell v. Southside Indep. Sch. Dist*., 858 S.W.2d 337, 341 (Tex. 1993); *see* TEX. R. CIV. P. 166a(c). Grounds, however, may "be stated concisely,

9

without detail and argument." *McConnell*, 858 S.W.2d at 340 (quoting *Roberts v. Sw. Tex. Methodist Hosp.*, 811 S.W.2d 141, 146 (Tex.App.—San Antonio 1991, writ denied)).

At trial, Energen moved for summary judgment on the grounds that "(1) Chapter 95 of the Texas Civil Practice[] and Remedies Code governs Plaintiffs' negligence claims against Energen; and (2) Energen is not liable to Plaintiffs under Chapter 95 because Energen did not exercise or retain control over the work performed by Plaintiffs." Energen's motion further asserted that "Chapter 95 applies to claims against a property owner (*i.e.*, Energen) for personal injury or property damages to a subcontractor (*i.e.*, Elite) or an employee of a subcontractor (*i.e.*, Wallace) *that arise from the condition* or use of an improvement to real property (*i.e.*, *the Water Well* and *Langley Well*)." (Emphasis added.)

By their objection, Wallace and Elite contend that not until Energen's responsive briefing on appeal did it raise the "principal argument" that claimants' allegations of negligence present a premises defect claim based on a dangerous condition of the Water Well—as opposed to a negligent activity claim based upon the drilling of the Oil Well. They further assert that Energen took a nearly opposite position in the trial court when it stated that "the water well and the oil and gas well are the same improvement for the purpose of Chapter 95[.]"

On review, Energen's primary argument in the trial court for the application of Chapter 95 focused solely on the Water Well while making no further mention of the Oil Well or any unity of improvements as shown by the following excerpt taken from Energen's motion:

> Plaintiffs allege that these injuries occurred while drilling and completing the Water Well. A water well is an improvement to real property within the meaning of Chapter 95. Therefore, Plaintiffs' claims against Energen fall squarely within the plain language of Chapter 95 and are governed by the statute as a matter of law.

As an alternative basis of the motion, however, Energen also presented a secondary argument that connected the Oil Well and the Water Well by claiming that the water well facilitated

the production of the oil well. Energen's motion stated, "[i]t is undisputed that the purpose of drilling the Water Well was to obtain water for use in the fracing [sic] and completion of the Langley Well, which in turn would allow the Langley Well to produce oil and gas." Thus, Energen argued, "[t]o the extent Plaintiffs claim that their injuries were caused by a condition of Energen's Langley Well and not the Water Well, Chapter 95 still applies."

We conclude that Wallace and Elite's objection reads Energen's motion too narrowly. Although Energen's primary argument heavily focused on the Water Well, the scope of the motion nonetheless broadly argued that Chapter 95 applied to both improvements, i.e., the Water Well and the Oil Well. Indeed, in responding to Energen's motion, Wallace and Elite in fact engaged in a more extensive discussion regarding the question of whether the Water Well and the Oil Well qualified as one unified improvement or two separate improvements on the property. In reply to Wallace and Elite's argument, Energen then disclaimed reliance on an argument of a "unified improvement" and instead asserted that regardless of whether the improvements were the same or separate they were both owned by Energen and situated on the same freehold.

Regardless of secondary arguments exchanged by the parties below, we conclude that Energen's motion for summary judgment itself broadly asserted that Chapter 95 governed the claims asserted, and, on appeal, this argument tracked with Energen's responsive briefing. Thus, we conclude that Wallace and Elite's Rule 166a(c) objection against Energen's briefing is overruled.

### 2. Objection concerning the pleading of an affirmative defense

Secondly, Wallace and Elite also object that affirmative defenses or avoidances not pleaded in an answer may not be argued for the first time on appeal. Specifically, Wallace and Elite argue that Energen's argument in which it contends that the claims arose from a premises condition of

11

the Water Well rather than a negligent activity on the Oil Well is in fact an affirmative defense which Energen failed to properly plead in its answer. Rule 94 of the Texas Rules of Civil Procedure requires that a party must affirmatively plead any matter constituting an avoidance or affirmative defense. TEX. R. CIV. P. 94. But we note that the record here reveals that Energen did affirmatively plead in its answer that the claims of Wallace and Elite were barred by Chapter 95. Wallace and Elite offer no explanation of why this pleading is insufficient to comply with Rule 94. Accordingly, Wallace and Elite's Rule 94 objection is overruled.

Having overruled the briefing objections, we return to our consideration of the threshold question of Chapter 95's application to the claims asserted.

### D. Chapter 95's Applicability to the Claims

On appeal, Wallace and Elite argue that their claims do not meet Chapter 95's requirements because the claims did not arise from a condition or use of an improvement on which they were working at the time their injuries were sustained. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2).

As stated earlier, Chapter 95 provides that it applies only to claims of negligence asserted against a property owner for personal injury or property damages to a subcontractor or an employee of a subcontractor "that arises from the condition or use of an improvement to real property where the … subcontractor constructs, repairs, renovates, or modifies the improvement." TEX. CIV. PRAC. & REM. CODE ANN. §§ 95.001, 95.002(2). In *Abutahoun*, while construing section 95.002(2), or the second prong of Chapter 95's applicability provision, the Supreme Court generally observed that it "include[d] several undefined statutory words and phrases that ha[d] amassed commonly-accepted legal meanings in th[e] Court's jurisprudence interpreting other tort-

related statutes." 463 S.W.3d at 48. Relevant to this case, *Abutahoun* highlighted three distinct elements required for applicability which are included among section 95.002(2)'s terms. *Id.*

First, the Court noted that the phrase "arises from," has been consistently defined "as being intended, at minimum, to capture causation." *Abutahoun*, 463 S.W.3d at 48 (citing *Ryder Integrated Logistics, Inc. v. Fayette Cnty.,* 453 S.W.3d 922, 928–29 (Tex. 2015) (per curiam) (construing how "arising from" was used in the Texas Tort Claims Act, discussing prior cases that explained the phrase, and concluding that "a plaintiff can satisfy the 'arising from' standard by demonstrating proximate cause")). Incorporating this understanding, *Abutahoun* clarified that Chapter 95 applies to a negligence claim that "*arises from, or is caused by*, the condition or use of an improvement to real property where the contractor or subcontractor [constructs, repairs, renovates, or] modifies the improvement." *Id*. (emphasis added).

Second, *Abutahoun* further noted that the inclusion of the disjunctive phrase, "condition or use," reflected the Legislature's intent for the statute to apply to all negligence claims that arise from either a premises defect or negligent activity of a property owner or its employees. *Id.* at 50 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2) and *Dugger v. Arredondo,* 408 S.W.3d 825, 835 (Tex. 2013)). *Abutahoun* reiterated, however, that "a condition of an improvement to real property represents a different concept than a use of an improvement to real property." *Id*. at 49. Although the Court acknowledged that both concepts "fall within the common meaning of the term negligence that appears, undefined, in section 95.001(1)," it cautioned that the concepts are distinct from each other and Chapter 95 preserves their distinction. *Id*. at 51.

Third, in construing the final clause providing, "where the contractor or subcontractor constructs, repairs, renovates, or modifies the improvement," *Abutahoun* explained that this ending phrase of the provision operated in line with causation to limit Chapter 95's applicability.

*Id*. at 48 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2)). *Abutahoun* described that "[w]hen a claim does *not* 'arise from a condition or use of an improvement to real property *where* the contractor or subcontractor ... [constructs, repairs, renovates, or] modifies the improvement,' Chapter 95 does not apply and an independent contractor can recover for common law negligence." *Id*. at 52 (citing *Felton v. Lovett,* 388 S.W.3d 656, 660 & n.10 (Tex. 2012) (declining to recognize abrogation of the common law because the statute did "not purport to affect the common law in cases other than those the statute covers") (emphasis added)). And, in such case, when a causal link does not exist between the claim asserted and an improvement where the contractor worked, *Abutahoun* reiterated that the "body of law on property owner liability for injuries suffered by independent contractors … continue[s] to apply to cases when the applicability provision of section 95.002 cannot be met." *Id*. (citing *Gen. Elec. Co. v. Moritz,* 257 S.W.3d 211, 214–15 (Tex. 2008) (explaining the duties owed to independent contractors under negligent activity and premises defect theories)).

A year after *Abutahoun's* release, the Supreme Court in *Ineos* again addressed section 95.002(2)'s terms. 505 S.W.3d at 567. In doing so, the Court clarified the meaning of the term "improvement," not in a general sense, but with regard to its evidentiary requirement. On appeal of a summary judgment in favor of a plant owner, the injured worker of *Ineos* contended that Chapter 95 did not apply to his claim because the property owner had failed to prove that the worker's injuries "arose from a condition or use of the same improvement on which he was working when he was injured." *Id*. at 567. The claimant—who worked as a boilermaker for an independent contractor that provided maintenance services at a petrochemical plant—alleged he was injured while replacing a valve on a furnace header. *Id.* at 559. The furnace under repair was part of a processing system through which hot, combustible gas flowed through pipes under

14

pressure. *Id.* When the worker removed a valve as part of performing his work, a burst of gas exploded out of the pipe that he worked on causing burns to his torso, neck, and face. *Id.* In filing suit against the plant owner, the worker theorized that a leaky valve located several hundred feet away from the valve on which he performed his work had caused gas to enter the pipes, which in turn resulted in an explosion when he opened the pipe system on which he was performing his work. *Id.* at 560.

Adding clarity to Chapter 95's use of the term "improvement," *Ineos* held that Chapter 95 only applies when the injury "results from a condition or use of the *same improvement* on which the contractor (or its employee) is working when the injury occurs." *Id.* at 567 (citing TEX. CIV. PRAC. & REM. CODE ANN. § 95.002); *see also Hernandez v. Brinker Int'l, Inc.,* 285 S.W.3d 152, 157–58 (Tex.App.—Houston [14th Dist.] 2009, no pet.) (plurality op.) (holding that Chapter 95 did not apply because the injury arose from a different improvement than the one the plaintiff was repairing)). Recognizing that "improvement" has been consistently interpreted broadly, *Ineos* resolved the evidentiary dispute by describing that "[t]he valves and furnaces, though perhaps separate in a most technical sense, were all part of a single processing system within a single plant on Ineos' property." *Id.* at 568 (citing *Abutahoun,* 463 S.W.3d at 49 and *Sonnier v. Chisholm–Ryder Co.,* 909 S.W.2d 475, 479 (Tex. 1995)). Because the property owner had conclusively established that the processing system amounted to a single "improvement," *Ineos* held that Chapter 95 applied to the worker's claim given that his injuries had arisen from a condition or use of the same improvement on which he was working when his injury occurred. *Id.* at 568.

## 1. Negligent Activity and Premises Defect

Relying on *Abutahoun* and *Ineos*, Wallace and Elite contend they advanced a theory from the outset of their case alleging that "the natural gas entered into the Water Well as a result of the

negligent activities of [Energen] and its representatives in the drilling of the nearby Oil Well, and that, but for the negligent drilling and resulting condition of the Oil Well, natural gas would never have entered the aquifer and then borehole of the Water Well." They stress that the evidence established they were not working on the Oil Well at the time of the incident; but rather, they worked on the Water Well, an improvement separate and distinct from the Oil Well. In other words, even though the incident related to two improvements, i.e., an Oil Well and a Water Well, they contend it was Energen's negligent drilling of the Oil Well, and the conditions and problems encountered as a result thereof, that actually caused their injuries. Because the Oil Well is separate from the improvement on which they worked, they contend that Energen failed to meet its threshold, evidentiary burden of establishing that Chapter 95 applied to their claims. *See Ineos,* 505 S.W.3d at 567.

In opposition, Energen does not argue on appeal that the improvements were connected or otherwise part of the same system. Nor does Energen argue that the evidence established that Wallace and Elite in fact worked on the Oil Well. Rather, Energen contends that the evidence established that the claims arose not from a negligent activity of the Oil Well but from a premises condition of the Water Well, which is the same improvement upon which Wallace and Elite were working. Said differently, Energen argues that Wallace and Elite improperly re-cast their claim from premises defect on the Water Well to negligent activity on the Oil Well to avoid Chapter 95's application.

In *Abutahoun*, the Court observed that "[t]he Legislature's enunciation of the two concepts of 'condition or use' [was] consistent with [the] Court's common law jurisprudence, also reflected in Chapter 95, surrounding a controlling contractor or property owner's liability for injuries to independent contractors." 463 S.W.3d at 49-50. Pursuant to long recognized jurisprudence,

16

*Abutahoun* recognized that a property owner's duty to keep premises in a safe condition "may subject the property owner to direct liability for negligence in two situations: (1) those arising from a premises defect, [and] (2) those arising from an activity or instrumentality." *Id.* at 50 (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985) and *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992)). While premises defect encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe, "negligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury[.]" *Id.* (citing *Del Lago Partners, Inc. v. Smith,* 307 S.W.3d 762, 776 (Tex. 2010)); *see also State v. Shumake,* 199 S.W.3d 279, 284 (Tex. 2006) (explaining that negligent activity claims require that "the claimant's injury result from [the] contemporaneous activity itself rather than from a condition created on the premises by the activity"); *Keetch,* 845 S.W.2d at 264 (explaining that a premises defect claim exists when the injury allegedly occurred as a result of a condition created by the activity while a negligent activity theory requires that the person have been injured by or as a contemporaneous result of the activity itself rather than by a condition created by the activity). Notwithstanding their differences, *Abutahoun* confirmed that "both claims are a species of negligence," as required by the statute's terms. 463 S.W.3d at 50.

When construing the same "condition or use" phrasing in relation to the Tort Claims Act, the Supreme Court cautioned that plaintiffs may not pursue a premises defect claim by re-casting the same acts as a claim relating to the negligent condition or use of tangible property. *Cf. Sampson v. University of Texas*, 500 S.W.3d 380, 385-87 (Tex. 2016) (citing TEX. CIV. PRAC. & REM. CODE ANN. § 101.022) (prohibiting re-casting of claims); *see also* TEX. GOV'T CODE ANN. § 311.023(4) (permitting courts to consider laws on similar subjects when construing statutes)). Importantly, *Sampson* instructed that courts must consider the nature of the claim and "whether it is properly

17

categorized as based on a premises defect or a condition or use of tangible personal property…." *Sampson*, 500 S.W.3d at 386. Accordingly, to determine whether Energen met its evidentiary burden of showing that Chapter 95 applied to the claims in this instance, we must consider the nature of the claims and whether they should be properly categorized as based on a premises defect arising from the Water Well or based on negligent activity arising from the Oil Well.

Although *Keetch* is not a Chapter 95 case, its facts are instructive in distinguishing between claims arising from a premises defect and those arising from negligent activity. Keetch, a customer of a store, was injured when she slipped and fell on a slick spot on the store's floor. *Keetch*, 845 S.W.2d at 264. In filing suit, she alleged that the condition of the floor resulted from an employee over spraying plants with a "waxy type substance," which was applied to plants for sale to add polish to their appearance. *Id.* On appeal, Keetch argued that she was entitled to submit to the jury a negligent activity theory of liability because the negligent spraying exposed the store's customers to an unreasonable risk of falling. *Id.* On review of the evidentiary record, however, the Supreme Court disagreed after noting there was no evidence of ongoing activity at the time Keetch was injured. *Id.* Without dispute, the evidence had established that a Kroger employee had last sprayed the plants sometime prior to her shift ending at 7 p.m., yet Keetch did not fall until at least 7:30 p.m., or well after the store's employee had already left the premises. *Id*. Given the absence of evidence of contemporaneous activity by the store's employee at the time of the fall, the Supreme Court concluded the trial court had properly rejected the negligent activity theory of liability even though it otherwise recognized that Keetch may have been injured by a condition created by the spraying. *Id*. Rejecting the negligent activity claim, the Court described that "Keetch may have been injured by a condition created by the spraying but she was not injured by the activity of spraying." *Id*.

18

## 2. The True Nature of the Claims

Guided by *Keetch*, we must determine whether Wallace and Elite alleged that their injuries and damages occurred by or as a contemporaneous result of the drilling activity on the Oil Well, or by a premises condition that was created on the Water Well. *Keetch*, 845 S.W.2d at 264. As earlier stated, Energen neither disputes that the improvements are distinct from each other nor that Wallace and Elite worked on the Water Well, not the Oil Well. *See Ineos*, 505 S.W.3d at 567 (Chapter 95 applies only if damages result from condition or use of same improvement plaintiff was working on). Thus, relevant to the evidentiary burden of the statute, if Energen conclusively established that the injuries arose from a premises defect of the Water Well, then Chapter 95 applied to the claims. *See id.* (Chapter 95 applies only if damages arise from the condition or use of the same improvement that plaintiff was working on). But if Wallace and Elite raised a genuine issue of fact as to whether the injuries arose as a contemporaneous result of negligent activity on the Oil Well and not as a premises defect of the Water Well, then Chapter 95 would not apply as a matter of a law given there's no dispute that they were not working on the Oil Well when they sustained their injuries and damages. *See id.*

We conclude that Wallace and Elite not only plead negligent activity on the Oil Well, occurring while they worked on the Water Well, but also presented evidence which raised a fact question on the contemporaneousness of that activity at the time the injuries occurred. Wallace and Elite alleged in their petition that Energen had breached its duty to act prudently, properly and safely in drilling the Oil Well at a time it was fully aware that Wallace and Elite were simultaneously drilling the nearby Water Well. Particularly, the claims assert that the incident of January 17, 2014, and resulting injuries were solely and proximately caused by Energen's negligent drilling of the Oil Well.

Wallace and Elite alleged the following series of events and conditions in support of their claims: that on January 14, 2014, the Oil Well experienced a gas kick at a depth of 8,898 feet, and in turn the kick caused the well to be shut-in which resulted in gas circulating to the surface; that during the gas kick, the Oil Well experienced a complete loss of fluid returns so severe that defendants were unable to keep the hole full; that the shutting in of the well following the gas kick caused pressure to build which should have been measured, reported, isolated and identified; that encountering high pressure gas and simultaneous loss of gas and drilling fluids to an unknown zone was not routine and demanded a prudent safety procedure and hazard reassessment, known as a management of change (MOC); and that other difficulties and uncertainties were additionally encountered to include the quality of the cement job which raised the probability that a seal did not exist for the entire length of casing and that the cement job was not performed to specification.

Among their allegations, Wallace and Elite claimed that Energen was fully aware that claimants were "simultaneously drilling the nearby Water Well," and that the resulting injuries were solely and proximately caused by the negligence of Energen and its representatives who had continued their active drilling of the Oil Well at the time and location of the incident in question. They further claimed they relied upon Energen "to warn them of any defective and/or dangerous conditions of which [Energen] knew, should have known or were on notice, that could foreseeably be encountered by [claimants] or impact the drilling and completion of the Water Well." Notably, Wallace and Elite alleged that "the high volumes of natural gas [was] not present in the aquifer as a result of natural reasons, but such presence is directly connected to the drilling of the Oil Well and the actions and/or omissions of those involved in the drilling of the Oil Well." Based on the allegations of the pleading, we conclude that Wallace and Elite alleged a claim of negligent drilling

20

on the Oil Well that proximately caused injuries and damages which they sustained while they were working on the Water Well. *Cf. Keetch*, 845 S.W.2d at 264.

As *Abutahoun* instructed, Chapter 95 uses the same phrase "condition or use" that also appears in the Texas Tort Claims Act. 463 S.W.3d at 49. Although these terms are left undefined by the statute, "condition" and "use" have well defined meanings under the Tort Claims Act. To be actionable, a "condition" claim under the Tort Claims Act must allege "defective or inadequate property." *Sampson*, 500 S.W.3d at 388 (quoting *Salcedo v. El Paso Hosp. Dist.,* 659 S.W.2d 30, 32 (Tex. 1983)). "Use" means "to put or bring into action or service; to employ for or apply to a given purpose." *Id*. (quoting *Tex. Dept. of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001)). To state a "use" of tangible personal property claim under the Tort Claims Act, "[u]sing that property must have actually caused the injury." *Id*. at 389. And a governmental unit "does not 'use' tangible personal property ... within the meaning of section 101.021(2) by merely providing, furnishing, or allowing ... access to it." *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 98 (Tex. 2012). Applying these same concepts to the phrase "condition or use" as included in Chapter 95 bolsters our conclusion here. For, in this instance, no allegation is made by either party that the Water Well itself was defective or inadequate. And Wallace and Elite make no allegation that they used the Water Well to draw out natural gas when the injury occurred. Instead, by their pleading, claimants essentially assert that the Water Well was a mere conduit for the end result of the alleged negligence committed by Energen by its contemporaneous activity on the Oil Well.

As evidentiary support of negligent drilling, Wallace and Elite presented daily operational reports of the Oil Well, which were produced by Energen, describing pertinent events and conditions occurring for a period of days beginning with the gas kick on January 14 through the eruption of fire on January 17. The daily reports showed that the Oil Well continued operating,

round the clock, throughout this relevant period, while multiple conditions and events were reported by representatives of Energen as follows:

Daily Morning Report:
- Report date 1/15/2014, Work date 1/14/2014 at 21:00: Well Control Shut in Well and Line up through Gas Buster; Turned on Flare Line, Displace Mud; at 2:30: Lost Circulation Attempt to Circ. & No Returns;
- Report date 1/16/2014, Work date 1/15/2014 at 13:30: Circulate and Condition Stop & Circulate Gas thru Gas Buster.

Energen Drilling Report:
- Report date 1/15/2014, [Work date 1/14/2014] at 21:15: Well kicked … 8,898'; at 2:45 Unable to break circ. no returns.
- Report date 1/16/2014, [Work date 1/15/2014] at 6:00: still no returns; 12:30 Drill without returns for a total of 15' & returns slowly came back; 23:45: Well flowing.
- Report date 1/17/2014, [Work date 1/16/2014] at 13:30: Unable to circ.
- Report date 1/18/2014, [Work date 1/17/2014] at 14:00: Monitor fire on water well rig by Frac water pits; at 18:00: Drill & survey.

Drilling Mud Report:
- Undated Report: drilled to 8,898', took kick, shut well in, lost returns, still no returns.

Viewing the evidentiary inferences in favor of Wallace and Elite, as we must, we conclude that a fact issue exists as to whether contemporaneous drilling on the Oil Well caused the injuries that were sustained by claimants while they worked on the Water Well. *See Wilson*, 168 S.W.3d at 822-24 (describing that a matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence). Unlike the complete absence of ongoing activity established in *Keetch*, the evidence here raised a question of fact as to whether the continuing operations on the Oil Well—which included periods of lost circulation and lost returns—proximately caused high volumes of natural gas to enter the aquifer from which Wallace and Elite were simultaneously drilling to complete the Water Well. *Cf. Keetch*, 845 S.W.2d at 264; TEX. CIV. PRAC. & REM. CODE ANN. § 95.002(2). Based on the evidentiary record, we conclude that Energen failed to conclusively establish as a matter of law that no contemporaneous

22

activity occurred on the Oil Well that resulted in the creation of a dangerous condition on the Water Well. *Cf. Keetch*, 845 S.W.2d at 264 (holding that recovery on a negligent activity theory requires that the plaintiff be harmed by or as a contemporaneous result of the activity itself).

In characterizing the claims as alleging a premises defect of the Water Well, Energen argues that "an injury caused by the release of natural gas or chemicals from an improvement presents a cause of action for a dangerous condition of that improvement." In support of their argument, Energen relies on two cases which allege claims against property owners but without Chapter 95 involvement, *Occidental Chem. Corp. v. Jenkins*, 478 S.W.3d 640, 642-43 (Tex. 2016), and *Exxon Corp. v. Garza*, 981 S.W.2d 415, 418 (Tex.App.—San Antonio 1998, pet. denied). In *Jenkins*, the case involved a claim for an injury caused by plaintiff using an acid-addition system in a chemical plant that had been installed by the plant's former owner. *Jenkins*, 478 S.W.3d at 642. The former owner had sold the property eight years earlier. *Id*. at 642-43. Filing suit against the former owner, the plaintiff alleged the owner remained liable for negligently designing and installing the acid-addition system which caused the injury. *Id*. at 644-645.

On review, the Texas Supreme Court characterized the claim as one sounding in premises liability given the allegation that the former property owner had created a dangerous condition on the property *Id*. at 648. However, because the evidentiary record established that the former owner sold the plant eight years earlier, the Court found that the owner was not liable for plaintiff's injuries. *Id*. "Without ownership, possession, or control of the plant, [the former owner] could not assess the continued safety of the acid-addition system or cure any deficiencies." *Id*. Plainly, unlike the present case, *Jenkins* includes no allegations or evidentiary proof of contemporaneous activity to support a claim of negligent activity. Thus, we conclude that *Jenkins* is distinguishable and unpersuasive to the circumstances of this case.

23

Similarly, we are not persuaded by *Exxon Corp. v. Garza*, 981 S.W.2d 415, 418 (Tex.App.—San Antonio 1998, pet. denied). In *Garza*, the plaintiff worked as a truck driver hauling gas condensate to and from a refinery to a leasehold owned by Exxon. *Id*. at 418. While on Exxon's property, Garza injured his knee when he hurriedly exited his truck after he smelled strong gas fumes and saw that a fire had erupted on a nearby electrical transformer. *Id*. In filing suit against Exxon, Garza alleged that Exxon had been negligent in allowing a contractor "to install the wrong kind of connections in the transformers on the Yates Lease." *Id*. at 420. Rejecting the claim of negligent activity, our sister court found that plaintiff was not injured "by or as a contemporaneous result of the negligent installation." *Id*. We conclude that *Garza* is distinguishable from the allegations and evidentiary record presented in this case.

In summary, we conclude that the record of this case contains evidence sufficient to create a fact issue about whether the fire on the Water Well and resulting injuries to Wallace and Elite were proximately caused as a contemporaneous result of Energen's negligent drilling of the Oil Well. *See Abutahoun,* 463 S.W.3d at 50; *Cf. Keetch,* 845 S.W.2d at 264. Thus, we hold that Energen's summary judgment motion did not establish as a matter of law that Chapter 95 applied to Wallace and Elite's claims.

Accordingly, we sustain Issue One.

Having determined that a factual issue precludes summary judgment on whether Chapter 95 applies, we further conclude it is unnecessary to the final disposition of this appeal to decide whether Wallace and Elite carried their burden on the challenged element of control to establish that the exception to Chapter 95's limitation of liability applied to this case. *See* TEX. R. APP. P. 47.1.

Accordingly, we do not reach Issue Two.

24

### III.    CONCLUSION

We conclude that Energen has not conclusively established that the claims asserted by Wallace and Elite arose from a condition or use of the Water Well where Wallace and Elite constructed, repaired, renovated, or modified the Water Well as required by Chapter 95's applicability provision. Thus, the record does not conclusively establish all elements required to demonstrate that Chapter 95 is applicable to the claims asserted. For these reasons, we reverse the trial court's grant of summary judgment and remand this matter for further proceedings consistent with this opinion.


                                                    GINA M. PALAFOX, Justice

April 24, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.

25